532 S.E.2d 896

**STATE of South Carolina, Respondent,**

v.

**Alonzo Clinton GREEN, Appellant.**

No. 3186.

Court of Appeals of South Carolina.

Submitted April 5, 2000.

Decided June 12, 2000.

Coming B. Gibbs, Jr., of Gibbs & Holmes, of Charleston, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Senior Assistant Attorney General Mark Rapoport, all of Columbia, and Solicitor David Price Schwacke, of North Charleston, for respondent.

HOWARD, Judge:

Alonzo Green was convicted and sentenced for trafficking in crack cocaine, possession of crack cocaine with intent to distribute, possession of heroin, and possession of a handgun during the commission of a violent crime. Green appeals, arguing the trial court erred in (1) finding the arresting officer made a lawful stop based only on an uncorroborated anony-

mous tip; (2) finding a frisk for weapons was justified; and (3) finding the arresting officer acquired knowledge of drug possession while conducting a frisk for weapons. We reverse.

## FACTS/PROCEDURAL HISTORY

While on duty at the corner of Morrison Drive and Romney Streets, Sgt. James Mackey (the officer) received a cellular telephone call from the Police Dispatcher. The officer was notified that a "black male by the name of Alonzo Green * * * was leaving the area of Bayside Manor." The anonymous caller also reported Green was driving a gray four-door Maxima and had just left a residence in Bayside Manor with a large sum of money and narcotics. While still on the telephone, the officer saw Green, whom he knew by sight, driving a gray Maxima traveling away from Bayside Manor. Based solely on the anonymous tip, the officer pulled Green over.

As the officer approached the vehicle, he noticed Green fumbling under the front seat. The officer testified that this fumbling led him to believe Green may have been in possession of a weapon. After asking Green to step out of the vehicle, the officer frisked him for weapons. Subsequent to this frisk, Green was found to be in possession of narcotics and a large some of money. The handgun was found later under the front seat of the vehicle.

Green's attorney moved to suppress the evidence, alleging the stop and the frisk were both violations of the Fourth Amendment. The trial judge denied the Motion to Suppress. Green was then convicted in a bench trial on May 4, 1999. This appeal follows.

## DISCUSSION

■ Green argues the trial judge erred in finding the officer made a lawful stop and had reasonable suspicion based only on an uncorroborated anonymous tip. We agree.

The trial judge concluded the stop was proper and based his finding of probable cause [1] for the stop on *Alabama v. White,*

---

1. Although the trial judge found there was probable cause, we note both sides argued the correct standard of reasonable suspicion to the trial

496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In *White,* police received an anonymous telephone tip that White would leave a particular apartment at a specific time with cocaine in her possession. The caller also informed police, in detail, what vehicle White would drive and her final destination. The police proceeded to the named location and witnessed a woman with an attache case enter a vehicle that matched the caller's description. They followed the vehicle for several miles and stopped the vehicle just short of the motel the caller described as White's final destination. A consensual search revealed marijuana and, after White was arrested, cocaine in her purse. The Court held that the anonymous tip exhibited a sufficient indication of reliability to provide reasonable suspicion to make the investigatory stop. This finding was based on the fact that the caller's story was sufficiently corroborated by the police and the caller was able to predict future behavior, which demonstrated a familiarity with White's affairs.

In contrast, the Court recently held that reasonable suspicion based solely on a call made from an unknown location by an unknown caller lacked sufficient indicia of reliability to make an investigatory stop. *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (Kennedy, J., and Rehnquist, C.J., concurring).[2] In *J.L.,* the police received an anonymous tip that a young black male, standing at a particular bus stop, wearing a plaid shirt, was carrying a gun. Officers went to the bus stop and observed three black males, one of whom was wearing a plaid shirt. They frisked all three males, based only on the anonymous tip, and found a gun in J.L.'s pocket. The Court found that the tip provided no predictive information and therefore left the police no way to test the knowledge or credibility of the anonymous caller. The Court stated:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however,

judge. We find that this misstatement by the trial judge is immaterial to our review and does not affect our decision.

**2.** The trial judge did not have the benefit of this decision at the time he made his ruling.

does not show that the tipster has knowledge of concealed criminal activity. [R]easonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*J.L.*, 529 U.S. at ——, 120 S.Ct. at 1379.

In reaching its decision in *J.L.*, the Court noted that "[i]f *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line." *Id.* We believe that the facts in this case are similar to those in *J.L.* and therefore, this case also falls on the other side of the line because the anonymous tip is not reliable enough to justify a *Terry* stop.

In the present case, the anonymous caller provided police with Green's name, a description of the car he was driving, and the location he would be departing. These items are readily observable and do not supply sufficient indicia of reliability to establish reasonable suspicion to justify an investigatory stop. The officer made no personal observations and had no reason, aside from the anonymous tip, to suspect Green of illegal conduct.

Additionally, the anonymous caller provided no predictive information, leaving the police without any means to test the his knowledge or credibility. Simply stating Green would leave Bayside Manor on a certain road does not rise to the level of predictive information when there are only two possible exits. The fact the allegation about the money and narcotics turned out to be correct does not suggest the officer, prior to the stop and frisk, had a reasonable basis for suspecting Green of engaging in unlawful conduct. The only information available to the officer was the statement of an unknown, unaccountable informant who neither explained how he knew about the money and narcotics, nor supplied any basis for the officer to believe he had inside information about Green. *See J.L.*, 529 U.S. at ——, 120 S.Ct. at 1379. Since the telephone call was anonymous, the caller did not place his credibility at risk and could lie with impunity. Therefore, we cannot judge the credibility of the caller, and the risk of fabrication becomes unacceptable. *See J.L.*, 529 U.S. at ——, 120 S.Ct. at 1381 (Kennedy, J., concurring)

■ We note "the requirement that an anonymous tip bear standard indicia of reliability in order to justify a stop in no

way diminishes a police officer's prerogative, in accord with *Terry,* to conduct a protective search of a person who has already been legitimately stopped." *J.L.,* 529 U.S. at ——, 120 S.Ct. at 1380. Applying the more deferential standard established in *State v. Brockman,* 339 S.C. 57, 528 S.E.2d 661 (2000)[3], we find no evidence to support the trial court's conclusion that the anonymous tip in the present case provided sufficient indicia of reliability to make an investigatory stop. Therefore, it was clear error for the trial court to allow the introduction of the evidence recovered during this investigatory stop. Since we find that all the evidence from this investigatory stop should have been suppressed, we need not address Green's other arguments.

## CONCLUSION

Based on the foregoing reasons, all evidence resulting from this stop should have been suppressed. Since the charges against Green can not be sustained without this evidence, Green's convictions in the present case are

**REVERSED.**

CONNOR and STILWELL, JJ., concur.

---

3. In *State v. Brockman,* our supreme court determined the appellate standard of review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding and the appellate court may only reverse where there is clear error.