647 S.E.2d 252

**The STATE, Respondent,**

v.

**Joshua WILLARD, Appellant.**

No. 4250.

Court of Appeals of South Carolina.

Heard April 10, 2007.
Decided May 31, 2007.

130

Appellate Defender LaNelle C. DuRant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

STILWELL, J.:

Joshua Willard appeals his conviction for trafficking methamphetamine. We affirm.

## FACTS

William Eugene Adams (Informant) was arrested on a family court bench warrant and found with a quantity of methamphetamine. Officer Kevin Smith notified Officer John Sherfield, a narcotics officer. Sherfield went to the jail and met with Informant. Informant told Officer Sherfield he and Joshua Willard were related, that Informant had purchased drugs from Willard in the past, and he intended to purchase drugs from Willard that day. Informant agreed to set up the buy and Officer Sherfield agreed to "try to help" Informant on his drug charge in exchange for his cooperation. Informant and Willard had not set a meeting place for the buy and Officer Sherfield directed Informant to arrange for the meeting to take place at a local movie theater parking lot.

Using Sherfield's mobile telephone, Informant called Willard. A transcription of the conversation was introduced into evidence:

Willard: Hello.

Informant: Hey.

Willard: Yo.

Informant: What's up man?

Willard: What's up?

Informant: ... I dunno, I'm trying to figure that out with you man ... <unclear> ... I've been shooting smooth, just wanna know where you at, where I need to be[.]

Willard: I've been <unclear>

Informant: You can't come to Union man?

Willard: Yeah I can come to Union.

Informant: Alright.

Willard: Hey, where you gonna be at?

Informant: Uhhhhh come to the movie theater parking lot man. <garbled noise>

Willard: ... <unclear> ... come see you.

Informant: What you mean the house or something?

Willard: Yeah I mean I'm getting ready to meet up with somebody and it's gonna take a ... <unclear> ...

Informant: Okay.

Willard: ... I'm in Union already.

Informant: Just meet me at the movie theater at the same time.

Willard: Alright.

Informant: Alright.

Sherfield testified the phrase "shooting smooth" meant smoking methamphetamine. Sherfield had no previous experience with Informant but testified Informant accurately described Willard's black Honda Civic that had dark tinted windows. Sherfield also claimed Willard had been identified as being involved in drug transactions with methamphetamine by other informants in the past, although he had never been arrested.

The telephone call on Sherfield's mobile phone to Willard originated at the car dock area of the Union County jail. Sherfield admitted there was a magistrate on duty at the courthouse in the same location at the time. However, Sher-

field believed he had reasonable suspicion to search Willard's car and question him without a warrant from the magistrate.

Later that day, Officer Kitchens radioed Sherfield and told him he had spotted Willard within a half mile of the movie theater. Sherfield's mobile phone rang, reporting a call from the number Informant called earlier. Sherfield did not answer. Constable Billy Bennett arrived at the theater in a green pickup truck. Kitchens was in the parking lot and watched Willard drive into the parking lot. Officer Smith also pulled into the parking lot. Sherfield pulled in and the four officers converged on Willard's car, blocking it in. Informant was not present, as he had already been booked and incarcerated.

Kitchens testified he asked Willard and the other occupant of his vehicle, a male, to exit the car. After the men exited the car, Sherfield explained their rights to them. Sherfield asked Willard "where the drugs were." Willard denied any knowledge of drugs. Sherfield held up his mobile phone and said "you (sic) been calling my phone." Willard "dropped his head and said they're in the console...." Kitchens approached the vehicle and found 17.46 grams of methamphetamine, digital scales, and $1,012 in cash.

At trial, the court heard pre-trial motions, including Willard's motion to suppress the drugs. Officers Sherfield and Kitchens testified. The court denied the motion finding, *inter alia*, Willard consented to the search.

## STANDARD OF REVIEW

In criminal cases, an appellate court sits to review errors of law only. Therefore, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). The same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). Our review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding. *State v. Butler,* 353 S.C. 383, 388, 577 S.E.2d 498, 500–01 (Ct.App.2003).

134

## DISCUSSION

Willard argues the trial judge erred in denying his motion to suppress the drugs as the product of an unlawful search. We disagree.

■■■ The Fourth Amendment guarantees "[t]he right of the people to be secure ... [from] unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search generally offends the Fourth Amendment. *State v. Dupree*, 319 S.C. 454, 456, 462 S.E.2d 279, 281 (1995). A warrantless search withstands constitutional scrutiny under the Fourth Amendment if it meets the requirements of one of several exceptions, including the automobile exception. *Id.* "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The police, however, may also stop and briefly detain a vehicle if they have a reasonable suspicion that the occupants are involved in criminal activity." *State v. Butler*, 343 S.C. 198, 201, 539 S.E.2d 414, 416 (Ct.App. 2000) (internal citations omitted).

" 'Reasonable suspicion' requires a 'particularized and objective basis that would lead one to suspect another of criminal activity.' " *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In determining whether reasonable suspicion exists, the court must consider the totality of the circumstances. *State v. Rogers*, 368 S.C. 529, 534, 629 S.E.2d 679, 682 (Ct.App.2006). Reasonable suspicion is more than a general hunch but less than what is required for probable cause. *Butler*, 343 S.C. at 202, 539 S.E.2d at 416.

■■■ In *State v. Green*, this court held an anonymous telephone tip provided insufficient indicia of reliability to justify an investigatory stop. 341 S.C. 214, 218, 532 S.E.2d 896, 897 (Ct.App.2000). However, in *State v. Rogers*, this court found a stop based on a known, reliable, confidential informant sufficient to meet the reasonable suspicion standard. 368 S.C. at 535, 629 S.E.2d at 682. We find this case meets the criteria of *Rogers*. Although the informant in this case was not previously proven reliable, as in *Rogers*, he was more than a mere tipster. The informant correctly identified Willard's vehicle,

knew Willard's telephone number, and mentioned drugs during the conversation with Willard. Although the informant's reliability had not previously been tested, a non-confidential informant is given a higher level of credibility because he exposes himself to liability should the information prove to be false. *See State v. Bellamy*, 323 S.C. 199, 204, 473 S.E.2d 838, 841 (Ct.App.1996). We thus find support to affirm the trial court's finding of reasonable suspicion for the stop.

■ We likewise find the requisite exigent circumstances for a warrantless search, arising from mobility, as required under *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). In *Carney*, the court upheld the warrantless search of a lawfully parked but fully mobile motor home under the automobile exception. 471 U.S. at 395, 105 S.Ct. 2066. Willard argues because the officers surrounded his vehicle, it was not "mobile" under *Carney*. However, temporary immobility may still be considered readily mobile so as to qualify for the automobile exception. *See Myers v. State*, 839 N.E.2d 1146, 1152 (Ind.2005) (cases cited therein).

In any event, we find Willard voluntarily consented to the search.[1] "Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent." *Palacio v. State*, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999). "Undoubtedly, a law enforcement officer may request permission to search at any time. However, when an officer asks for consent to search *after* an unconstitutional detention, the consent procured is per se invalid unless it is both voluntary and not an exploitation of the unlawful detention." *State v. Pichardo*, 367 S.C. 84, 105, 623 S.E.2d 840, 851 (Ct.App.2005) (emphasis in original). Whether consent to a search is voluntary is a question of fact to be determined from the totality of the circumstances. *State v. McKnight*, 352 S.C. 635, 656, 576 S.E.2d 168, 179 (2003).

■ We find evidence to support the trial court's finding that the consent was voluntary. Willard's consent to search was obtained after Officer Sherfield read Willard his rights

---

1. Although the State argues this issue is not preserved for appellate review as not raised on appeal, we find sufficient argument in Willard's brief to address the issue.

under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Willard consented to the search by nodding his head toward the vehicle and telling the officers the drugs were in the console, after notification of the calls to Sherfield's mobile phone.

We likewise find the search was not an exploitation of an unlawful detention. As previously discussed, we find reasonable suspicion existed to make the stop and detention. Furthermore, although Willard allegedly noticed the officers' guns when first surrounded, there is no evidence of any threat of force against Willard once he had exited his vehicle. Nor is there evidence of coercion or promises made. After review of all the circumstances, we find no error by the trial court in denying Willard's motion to suppress the drugs. *See Green*, 341 S.C. at 219 n. 3, 532 S.E.2d at 898 n. 3 (holding "the appellate standard of review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding and the appellate court may only reverse where there is clear error.").

**AFFIRMED.**

HEARN, C.J., and GOOLSBY, J., concur.