214

763 S.E.2d 814

**The STATE, Respondent,**

**v.**

**Roderick POPE, Appellant.**

Appellate Case No. 2012–207226.

**No. 5261.**

Court of Appeals of South Carolina.

Heard June 2, 2014.

Decided Aug. 20, 2014.

Rehearing Denied Oct. 23, 2014.

216

218

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia, for Respondent.

SHORT, J.

Roderick Pope appeals his conviction for possession with intent to distribute crack cocaine. Pope argues the trial court erred in: (1) refusing to suppress the evidence seized during the search of the vehicle when law enforcement did not have reasonable suspicion to justify the traffic stop; (2) refusing to suppress the evidence seized during the search of the vehicle because law enforcement did not have probable cause to believe the vehicle contained evidence of criminal activity and no exigent circumstances existed to justify the warrantless search; and (3) finding a sufficient chain of custody existed to admit the evidence seized during the search of the vehicle and the drug evidence found in the police car. We affirm.

**FACTS**

Officers arrested Vincent Harris at approximately 3:30 p.m. on June 24, 2010, after he sold crack cocaine to a confidential

informant.[1] In an attempt to get out of jail on bond, Harris
agreed to arrange a drug transaction with his supplier, Pope.[2]
Harris called Pope to arrange a deal that same day for a half
ounce of crack cocaine for six hundred dollars.[3] Harris told
Union County Sheriff's Sergeant James Johnson that Pope
would be traveling on Highway 176 from Spartanburg into
Union, and he would be driving a black Ford Expedition.
Sergeant Johnson relayed the information about the deal and
the vehicle to officers who set up at various locations along
Highway 176. Harris called Pope to check on his location and
told Sergeant Johnson that Pope had just passed the Light-
house Fish Camp. Sergeant Johnson relayed Pope's location to
the officers on the highway, and Captain James McNeil said
he had a visual sighting on an Expedition at the Lighthouse
Fish Camp. At approximately 6 p.m., Sheriff David Taylor saw
the vehicle; he activated his blue lights; the Expedition pulled
over; and Lieutenant John Sherfield and Captain McNeil
pulled in behind the vehicles.

Three men were in the vehicle: Pope, Randy Crosby, and
Lashad Brewton. Brewton was driving; Pope was in the
front passenger seat; and Crosby was in the right rear seat.
The vehicle was registered to Pope's wife, but Pope's license
was suspended. Brewton stopped in the median instead of the
right shoulder of the highway and took about a minute to pull
over. As Lieutenant Sherfield approached the vehicle, he
observed Crosby turn around, look back at him, bend down,
and sit back up. After the officers removed the three men
from the vehicle and handcuffed them, Lieutenant Sherfield
searched the vehicle. Underneath the seat where Crosby had
been sitting, he found a digital scale with white residue. He
tested the residue with a field test kit and determined it was
cocaine. All three men were arrested for possession of co-
caine. The officers did not find drugs on the men when they

---

1. The confidential informant knew Harris as "Vince."

2. Harris testified his bond was reduced to $2,000 in exchange for
making the calls to Pope. He later pleaded guilty to distribution of
crack cocaine and was sentenced to three years' imprisonment. Harris
was facing ten to thirty years' imprisonment if he had not offered to
help the police.

3. A half ounce equals fourteen grams.

searched them on the side of the road. However, Lieutenant Sherfield found two hundred eighty dollars and a cell phone on Brewton, and five hundred seventy dollars on Crosby. The officers also found a cell phone on Pope that had fourteen incoming calls and five outgoing calls on that day to a person listed as "Vince." After arriving at the jail, Corporal Russell Vinson searched the vehicle he used to transport Brewton and Crosby.[4] In the back, underneath the seat where Crosby had been seated, Corporal Vinson found a yellow plastic bag containing a little more than eleven grams of crack cocaine.

Pope was indicted for trafficking more than ten grams but less than twenty-eight grams of crack cocaine. The case proceeded to trial on December 6 through 8, 2011. The State tried Pope with his two co-defendants, Crosby and Brewton. The jury found Pope guilty of the lesser-included offense of possession with intent to distribute crack cocaine. The court sentenced him to fifteen years, suspended upon the service of ten years with five years' probation. The court denied Pope's motion to reconsider his sentence. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). Thus, on review, this court is limited to determining whether the trial court abused its discretion. *Id.* An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). "This [c]ourt does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

## LAW/ANALYSIS

### I. Reasonable Suspicion

Pope argues the trial court erred in denying his motion to suppress the evidence seized during the search of the vehicle

---

4. Corporal Vinson testified he searched his vehicle prior to putting Brewton and Crosby in the back seat to make sure there was nothing there.

because law enforcement did not have reasonable suspicion to justify the traffic stop. We disagree.

In criminal cases, this court only reviews errors of law. *State v. Butler*, 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003). This standard of review also applies to preliminary factual findings in determining the admissibility of certain evidence. *Id.* In Fourth Amendment search and seizure cases, our review is limited to determining whether there is any evidence to support the trial court's finding. *State v. Moore*, 404 S.C. 634, 640–41, 746 S.E.2d 352, 355 (Ct.App. 2013). This court will not reverse a trial court's findings of fact merely because we would have reached a different conclusion. *Id.*

"A police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in criminal activity." *State v. Woodruff*, 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App.2001). "The term 'reasonable suspicion' requires a particularized and objective basis that would lead one to suspect another of criminal activity." *Id.* In analyzing reasonable suspicion, "it is entirely appropriate for courts to credit the practical experience of officers who observe on a daily basis what transpires on the street." *State v. Wallace*, 392 S.C. 47, 52, 707 S.E.2d 451, 453 (Ct.App.2011) (internal quotation marks and citations omitted). "In determining whether reasonable suspicion exists, the whole picture must be considered." *Woodruff*, 344 S.C. at 546, 544 S.E.2d at 295. "Factors that are alone consistent with 'innocent travel' can, when 'taken together' produce a reasonable suspicion of criminal activity." *Wallace*, 392 S.C. at 52, 707 S.E.2d at 453 (quoting *United States v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). "In applying the concept of reasonable suspicion to the various facts of a case, '[i]t is the entire mosaic that counts, not single tiles.'" *Id.* (quoting *United States v. Whitehead*, 849 F.2d 849, 858 (4th Cir.1988)).

Pre-trial, Pope moved to suppress the drugs seized during the search of the vehicle. During trial, Pope again moved to suppress the evidence, arguing no reasonable suspicion existed for the traffic stop, and law enforcement did not have probable

cause to search the vehicle. The State responded the corroboration between the information Harris gave Sergeant Johnson and the officers' observations gave them reasonable suspicion to stop the vehicle.

The court denied the motion to suppress, stating, "I think the ice here is thin, but I think it's thick enough to support the arrest, the stop first, then the search and then the arrest, and they went in that order." The court determined Harris was not a confidential informant, but he was "somewhere between [a] confidential informant and [an] anonymous tip[ster]." The court found law enforcement had reasonable suspicion to stop the vehicle:

> [L]ooking at the totality of the circumstances, . . . it was a police investigation that determined the validity of the information they received from [Harris]. . . . Not a lot of information, that's true, but enough, I think, to establish probable cause to make the stop, and that corroboration is that a black Ford Expedition would be coming from Spartanburg to Union on 176 out of Spartanburg. That alone would not be enough, but the . . . key is the fact that [Harris] . . . gave information that he had been contacted by whoever was on the other end of that phone, whether it was [Pope] or not, that the car in question was passing the Lighthouse Fish Camp, and that was confirmed by [Captain] McNeil. . . . So I think that's enough to create probable cause for the stop.

Pope argues on appeal the officers did not have reasonable suspicion to justify the traffic stop because: (1) the information provided by Harris is inherently unreliable; (2) the vehicle was not in a high crime area; (3) the vehicle was traveling legally and no citations were issued; (4) there was no evidence of attempted flight; (5) there was no evidence of evasive behavior; (6) the time was 6:00 pm on June 24, so it was not late; (7) the trial court relied on incorrect information that Captain McNeil saw the Ford Expedition at the Lighthouse, when it was actually a mile down the interstate; and (8) law enforcement failed to verify any information regarding the black Ford Expedition prior to the stop. Therefore, he asserts the trial court erred in refusing to suppress the evidence seized by law enforcement.

In *State v. Peters,* 271 S.C. 498, 502–03, 248 S.E.2d 475, 477 (1978), our supreme court determined that where the

informant gave the officer a description of an automobile that would contain marijuana and would be leaving shortly, the officer's direct observation of an automobile conforming in every respect to the informant's tip provided sufficient circumstances to assure reliability of the informant's information. "In determining whether the evidence is sufficiently detailed to give rise to probable cause, all the evidence within the arresting officer's knowledge may be considered, including the details observed while responding to information received." *State v. Roper*, 274 S.C. 14, 17, 260 S.E.2d 705, 706 (1979). Additionally, "a non-confidential informant should be given a higher level of credibility because he exposes himself to public view and to possible criminal and civil liability should the information he supplied prove to be false." *State v. Driggers*, 322 S.C. 506, 511, 473 S.E.2d 57, 60 (Ct.App.1996); *see also Lopez v. State*, 292 Ga.App. 518, 664 S.E.2d 866, 869 (2008) ("[I]n terms of providing probable cause for an arrest, the admissions against penal interest of a known informant in the hands of police (even though that informant's name is not disclosed at the trial of the accused) are valuable facts indicating that the informant is telling the truth and is reliable.").

 Sergeant Johnson was at the jail with Harris when Harris made several phone calls to Pope, and Pope made several calls to Harris. Sergeant Johnson testified he heard Harris on the phone and told Lieutenant Sherfield that Harris arranged a transaction to purchase fourteen grams of crack cocaine from Pope for six hundred dollars. Sergeant Johnson said Pope told Harris he would be traveling on Highway 176 into Union County from Spartanburg County in a black Ford Expedition. Sergeant Johnson said other people were in the vehicle because Harris could hear them talking in the background while he was on the phone with Pope. During a subsequent phone call, Pope told Harris he was almost in Union County and was driving past the Lighthouse Fish Camp. Sergeant Johnson radioed officers Pope's location, and Captain McNeil said he had a visual on the black Ford Expedition at Lighthouse Fish Camp heading towards Union. Captain McNeil followed the vehicle in his unmarked truck, and Lieutenant Sherfield followed behind him until Sheriff Taylor initiated the stop. As Lieutenant Sherfield approached the vehicle, he observed Crosby turn around, look back at him, bend down, and sit back up.

We find Harris' description of the vehicle, including the color, make, and model; the highway and direction the vehicle would be traveling; the location of the vehicle at a specific time; and that more than one person was in the vehicle, was corroborated by officers observing a vehicle matching the exact description, traveling in the specified direction, located in the stated area, and containing more than one person. Furthermore, Harris was not a confidential informant and exposed himself to criminal liability should the information he supplied to officers prove to be false. Therefore, we find the trial court did not err in denying the motion to suppress the evidence seized during the search of the vehicle because law enforcement had reasonable suspicion to justify the traffic stop.

## II. Probable Cause

Pope argues the trial court erred in denying his motion to suppress the evidence seized during the search of the vehicle because law enforcement did not have probable cause to believe the vehicle contained evidence of criminal activity and no exigent circumstances existed to justify the warrantless search. We disagree.

A warrantless search is generally *per se* unreasonable, and therefore, violates the Fourth Amendment's prohibition against unreasonable searches and seizures. *State v. Weaver*, 374 S.C. 313, 319, 649 S.E.2d 479, 482 (2007). However, a warrantless search will withstand constitutional scrutiny if the search falls within one of several well-recognized exceptions to the warrant requirement, one of which is the automobile exception. *Id.* "Pursuant to the automobile exception, if there is probable cause to search a vehicle, a warrant is not necessary so long as the search is based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *Id.* at 320, 649 S.E.2d at 482. Probable cause has been defined as " 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Baccus*, 367 S.C. 41, 50, 625 S.E.2d 216, 221 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "The automobile exception to the search warrant requirement is based on: (1) the ready mobility of automobiles and the potential that evidence may be lost or destroyed before a warrant is obtained and (2) the

lessened expectation of privacy in motor vehicles which are subject to government regulation." *Weaver*, 374 S.C. at 320, 649 S.E.2d at 482. "The automobile exception does not contain a separate exigency requirement." *Id.*

During trial, Pope again moved to suppress the evidence, arguing the officers did not have probable cause to search the vehicle. The State argued the officers had reasonable suspicion to stop the vehicle, and therefore, they had probable cause to search it. The State maintained the officers had probable cause to think the vehicle would contain illegal drugs that were about to be used in the drug transaction Harris arranged, so they had a right to search the vehicle. The court found the search was proper under the automobile exception.

On appeal, Pope argues the officers did not have probable cause to believe the vehicle contained evidence of criminal activity because they failed to conduct an investigation to gain probable cause. He asserts they only had the unreliable information provided by Harris, who was facing jail time. Therefore, he asserts the trial court erred in refusing to suppress the evidence seized by law enforcement.

We find that based on the corroboration of Harris' information—including the description of the vehicle, the highway and direction the vehicle would be traveling, the location of the vehicle at a specific time, and that more than one person was in the vehicle—combined with an officer observing Crosby turn around, look back at him, bend down, and sit back up, gave officers probable cause to search the vehicle for the drugs Harris had arranged to purchase. Therefore, the trial court did not err in denying the motion to suppress the evidence seized during the search of the vehicle because law enforcement had probable cause to believe the vehicle contained evidence of criminal activity.

## III. Chain of Custody

Pope argues the trial court erred in finding a sufficient chain of custody existed to admit the evidence seized during the search of the vehicle and the drug evidence found in the police car. We disagree.

"[T]his court has long held that a party offering into evidence fungible items such as drugs or blood samples

must establish a complete chain of custody as far as practicable." *State v. Sweet,* 374 S.C. 1, 6, 647 S.E.2d 202, 205 (2007). "Where an analyzed substance that has passed through several hands, the identity of individuals who acquired the evidence and what was done with the evidence between the taking and the analysis must not be left to conjecture." *Id.* "Testimony from each custodian of fungible evidence, however, is not a prerequisite to establishing a chain of custody sufficient for admissibility." *Id.* at 7, 647 S.E.2d at 206. "[I]f the identity of each person handling the evidence is established, and the manner of handling is reasonably demonstrated, no abuse of discretion by the trial court is shown in admitting the evidence absent proof of tampering, bad faith, or ill-motive." *Id.* at 6, 647 S.E.2d at 205–06. "[T]he chain of custody need be established only as far as practicable, and we reiterate that every person handling the evidence need not be identified in all cases." *State v. Hatcher,* 392 S.C. 86, 95, 708 S.E.2d 750, 755 (2011).

 In contrast, "[w]hile the chain of custody requirement is strict where fungible evidence is involved, where the issue is the admissibility of non-fungible evidence—that is, evidence that is unique and identifiable—the establishment of a strict chain of custody is not required." *State v. Freiburger,* 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005).

If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition.

*Id.* at 134, 620 S.E.2d at 741–42.

During trial, Pope moved to suppress the scales found during the search of the vehicle, arguing the State failed to establish a sufficient chain of custody. The State responded that Lieutenant Sherfield testified he found the scales and put the case number on the scales.

The court addressed the chain of custody issue as it related to the scales found in the vehicle:

[T]here's certainly a lot of questions about the way it was handled, but it was not a fungible item. It's like a pistol or

a shotgun or a television that could be not—I guess it could be tampered with. In fact, the battery was missing, but the character of it is not readily changeable, is not fungible; that it, it cannot be mixed in with something else and be confused. It could be under the way it was kept, had it not been marked, but it was marked on the [scales] itself. [If] [i]t could only be marked on the bag, we'd have a problem because the bag came open while it was in custody. But, it's my understanding of the testimony . . . that there is an identifying number on the [scales] itself. So I find that the . . . scales, I'm not going to suppress the introduction of the scales.

At trial, the court entered the scales over Pope's objection.

■ On appeal, Pope argues the trial court erred in finding a sufficient chain of custody existed because the scales were not secured in an evidence bag and one of the batteries was missing, and Lieutenant Sherfield provided false information on the affidavit accompanying the evidence bag.

We agree with the trial court that the scales were a non-fungible item; therefore, the establishment of a strict chain of custody was not required. However, the State also presented evidence of the chain of custody. Lieutenant Sherfield testified he found the scales in the vehicle, put the case number on the scales, and secured it inside a locked vault. He explained the scales were not still in the original evidence bag because that bag had broken open when he got it out of the vault the day before. Also, he testified a battery was missing from the scales, but was not missing when he put the scales into the vault. He asserted he had the scales in his vault the entire time.

■ During trial, Pope moved to exclude the crack cocaine found in the police car based on an alleged problem with the chain of custody because Lieutenant Sherfield's affidavit stated he seized the drugs from Crosby, Brewton, and Pope when he was not the one who seized the drugs. The court denied the motion.

We find the evidence shows the State properly established the chain of custody as to the drugs found in the police car. Lieutenant Sherfield testified he took the crack cocaine Corporal Vinson found in the back seat of the patrol car back to his

office; secured it in an evidence bag to be sent to SLED for analysis; marked the bag with his name and the date; and secured the evidence in a vault in his office. Lieutenant Sherfield transported the evidence to SLED, along with several other evidence bags, on September 21, 2010. Willie Smith, a senior criminalist-chemist in the drug analysis department of SLED, testified he received the evidence on September 22, 2010. He determined the substance was eleven and a half grams of crack cocaine. He testified to the chain of custody of the drugs; that the evidence bag was still sealed when he received it; he resealed it after he tested it; and it was still in the same condition it was when he resealed it.

Therefore, the trial court did not err in admitting either the scales or the drugs found in the police car because the scales were a non-fungible item and the establishment of a strict chain of custody was not required, and a complete chain of custody was established for the drugs, which were a fungible item.

## CONCLUSION

Accordingly, the decision of trial court is

**AFFIRMED.**

FEW, C.J., and GEATHERS, J., concur.