803 S.E.2d 724

**The STATE, Respondent,**

**v.**

**Jo PRADUBSRI, Appellant.**

Appellate Case No. 2015-000208

Opinion No. 5499

Court of Appeals of South Carolina.

Heard November 9, 2016

Filed July 19, 2017

Rehearing Denied August 18, 2017

Appellate Defender John Harrison Strom, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia; and

Solicitor Samuel R. Hubbard, III, of Lexington, for Respondent.

MCDONALD, J.:

Jo Pradubsri appeals his convictions for trafficking in crack cocaine, possession with intent to distribute crack cocaine within the proximity of a school (the proximity charge), and unlawful carrying of a pistol. Pradubsri argues the circuit court erred when it (1) refused to reveal an informant's identity, (2) found reasonable suspicion existed to justify his traffic stop, (3) gave an erroneous jury instruction on reasonable doubt, (4) refused to grant a directed verdict on the proximity charge, and (5) allowed testimony from a former codefendant that Pradubsri manufactured crack cocaine in his residence and participated in a drug sale immediately before the traffic stop. We affirm.

## Factual Background

Around 3:00 a.m. on November 9, 2008, Sergeant John Finch of the Lexington County Sheriff's Department stopped Pradubsri's vehicle on St. Andrews Road in Irmo based on an informant's tip that the vehicle would likely contain crack cocaine and weapons. Finch conducted the stop as Pradubsri's vehicle exited a Kroger parking lot less than half a mile from an elementary school. Pradubsri was driving with his then-girlfriend, Melissa Martin, sitting in the passenger's seat. When Finch approached the vehicle, he saw furtive or shuffling movements and observed a black 9mm semi-automatic pistol on Pradubsri's side of the car. As Finch removed Pradubsri and Martin from the car, another officer saw that Martin had a small baggie in her clinched fist, a baggie in her waistband, and an unnatural bulge in her pants. In total, police found four baggies of crack weighing approximately seventy-five grams on Martin. Police also found a smaller .25-caliber semi-automatic pistol in a purse under a seat.

## Law and Analysis

### I. Reasonable Suspicion

Pradubsri argues police lacked reasonable suspicion to justify the traffic stop because the informant's information was neither sufficiently particularized nor corroborated. We disagree.

Before trial,[1] the State proffered testimony about the informant, whom Sergeant Finch had arrested for drugs and prostitution in the past. Finch testified he had used the informant multiple times before Pradubsri's arrest, he always found her information to be reliable, and she had assisted with several cases involving individuals on the "Midland's Most Wanted" list.

In Pradubsri's case, the informant participated informally by making "ten to twenty" phone calls to police over a three-month period. Through these calls, she relayed information about Pradubsri's and Martin's vehicle, their travel plans, their nicknames, and the locations where they sold drugs. Specifically, the informant told police the pair mostly sold drugs in hotels and motels and "were moving up and down Bush River [Road] down to St. Andrews [Road] and then back into the Irmo area." The informant also reported where Pradubsri and Martin lived, how much cocaine they bought per week, and where it was cooked into crack.

According to the informant, if Pradubsri was driving at night with Martin as his passenger, the vehicle would likely contain crack and weapons. The informant also identified the weapons: Pradubsri carried a black 9mm Hi-Point semi-automatic pistol, and Martin had a small silver .25-caliber semi-automatic.

On the night of the traffic stop, Finch spotted the silver 2001 Chevy Monte Carlo with a dent on the front right panel on St. Andrew's Road. Pradubsri was driving and Martin was his passenger. Finch had previously dealt with both Pradubsri and Martin but testified he knew Martin "a little more extensively from the prostitution and drugs and on the street." After Finch and another deputy approached Pradubsri's vehicle, Finch saw the handle of a pistol protruding from the gap between the driver's seat and the car's center console.[2] At this

---

1. Pradubsri was initially tried in 2010, but his convictions were reversed after this court found the trial court erroneously restricted Martin's cross-examination. *See State v. Pradubsri*, 403 S.C. 270, 743 S.E.2d 98 (Ct. App. 2013). A 2014 retrial ended in a mistrial.

2. Finch's investigation revealed Pradubsri was a felon who could not legally possess a firearm.

point, Finch ordered Pradubsri and Miller to step out of the vehicle, and the deputies found the drugs and second weapon.

Pradubsri moved to suppress the evidence seized during the traffic stop, arguing police did not have reasonable suspicion of criminal activity necessary to justify the stop. The trial court found the stop proper based upon the reliable information provided by the informant that Pradubsri and Martin were in engaged in criminal activity.

"Our review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding." *State v. Willard*, 374 S.C. 129, 133, 647 S.E.2d 252, 255 (Ct. App. 2007). "A traffic stop is not unreasonable if conducted with probable cause to believe a traffic violation has occurred, or when the officer has a reasonable suspicion the occupants are involved in criminal activity." *State v. Vinson*, 400 S.C. 347, 352, 734 S.E.2d 182, 184 (Ct. App. 2012). " 'Reasonable suspicion' requires a 'particularized and objective basis that would lead one to suspect another of criminal activity.' " *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). "In determining whether reasonable suspicion exists, the court must consider the totality of the circumstances." *Willard*, 374 S.C. at 134, 647 S.E.2d at 255. "Reasonable suspicion is more than a general hunch but less than what is required for probable cause." *Id.* "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

In *White*, police received an anonymous telephone tip that Vanessa White would leave a certain apartment complex at a specific time in a brown Plymouth station wagon with a broken taillight. 496 U.S. at 327, 110 S.Ct. 2412. The tipster further stated White would travel to a particular motel and would have about an ounce of cocaine in a brown attaché case. *Id.* Police discovered White's vehicle at the apartment complex, followed it as it drove the most direct route to the motel, and initiated a stop shortly before it reached the motel. *Id.* A consensual search revealed marijuana in a brown attaché case

and cocaine in White's purse. *Id.* The United States Supreme Court held that at the time of the stop "the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that [White] was engaged in criminal activity." *Id.* at 331, 110 S.Ct. 2412. While acknowledging that not every detail mentioned by the tipster was verified, the Supreme Court placed particular importance on the tipster's ability to predict White's future behavior "because it demonstrated inside information—a special familiarity with [White's] affairs." *Id.* at 331–32, 110 S.Ct. 2412. Ultimately, the Supreme Court concluded "[w]hen significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* at 332, 110 S.Ct. 2412.

However, in *State v. Green*, this court held an anonymous caller who gave police a tip that Green was carrying a large sum of money and narcotics along with Green's name, a description of his car, and the location he would be departing did not "supply sufficient indicia of reliability to establish reasonable suspicion to justify an investigatory stop." 341 S.C. 214, 218, 532 S.E.2d 896, 897 (Ct. App. 2000). This court noted the caller's information was readily observable and provided no predictive information, especially when the location from which the defendant departed had only two possible exits and the officer had no reason, aside from the tip, to suspect criminal activity. *Id.* at 218, 532 S.E.2d at 897–98. Significantly, this court stated, "Since the telephone call was anonymous, the caller did not place his credibility at risk and could lie with impunity. Therefore, [the court] cannot judge the credibility of the caller, and the risk of fabrication becomes unacceptable." *Id.* at 218, 532 S.E.2d at 898.

Conversely, in *State v. Rogers*, an officer received information from a known informant concerning the location of a planned robbery, the individuals involved, and the vehicle they would be driving. 368 S.C. 529, 532, 629 S.E.2d 679, 681 (Ct. App. 2006). The officer later received a dispatch about the robbery and found and stopped the car described by the informant. *Id.* at 531–32, 629 S.E.2d at 681. On appeal from the denial of Rogers's motion to suppress, this court found *Green* "clearly distinguishable" because it involved an investigatory stop based on an anonymous tip, as opposed to infor-

mation from a known and reliable informant whom police had used in the past. *Id.* at 535, 629 S.E.2d at 682. Specifically, the court stated the officer "received the information from a known, accountable informant whose reputation could be assessed and who explained how he knew about the planned robbery, thereby supplying a basis, outside of his already proven reliability, for [the officer] to believe the confidential informant had inside information on the matter." *Id.*

More recently, in *State v. Pope,* an informant facing a drug charge arranged a drug sale with the defendant in exchange for a bond reduction. 410 S.C. 214, 219–20, 763 S.E.2d 814, 817 (Ct. App. 2014). The informant described the make, model, and color of Pope's vehicle, as well as the highway and direction in which Pope would be traveling with more than one person. *Id.* at 220, 763 S.E.2d at 817. The informant also called Pope while he was in route to the sale and relayed his specific location to police. *Id.* When police stopped the vehicle and conducted warrantless searches of the vehicle and its occupants, they discovered drug residue, scales, and cash. Later, upon searching the car that transported two of Pope's companions to the detention center, a deputy discovered a yellow bag containing a little more than eleven grams of crack cocaine. *Id.* at 220–21, 763 S.E.2d at 817–18.[3] On appeal, this court found reasonable suspicion existed for the traffic stop because police were able to corroborate the informant's description of the vehicle, the highway and direction of the vehicle, the location of the vehicle at a specific time, and the fact that more than one person would be in the vehicle. *Id.* at 225, 763 S.E.2d at 820.

█ Likewise, the evidence here supports the circuit court's finding that police had reasonable suspicion to stop the Pradubsri vehicle. *Willard,* 374 S.C. at 133, 647 S.E.2d at 255. Finch's in camera testimony revealed the informant provided police with the following information: Pradubsri's and Martin's nicknames were JoJo and Magic, they drove a silver 2001 Chevy Monte Carlo with a dent on the front right panel, they sold drugs "moving up and down Bush River [Road] down to St. Andrews [Road] and then back into the Irmo area," they

---

3. The court of appeals further upheld the warrantless searches of the vehicle and found a complete chain of custody was established for the cocaine.

lived off of Lord Howe Road, they cooked the cocaine into crack at their home, and they were more likely to be dealing drugs at night when Pradubsri was driving and Martin was in the passenger seat. The informant also specified the vehicle would contain crack, a black 9mm pistol, and a silver .25-caliber semi-automatic weapon.

Given these facts, evidence supports the circuit court's decision that under the totality of the circumstances, the police had reasonable suspicion for the traffic stop. *See Willard,* 374 S.C. at 134, 647 S.E.2d at 255. This case is somewhat unique because the informant here did not give as much predictive information as the tipster in *White* and because the informant provided her information to law enforcement over some three months before Pradubsri's vehicle was located and stopped. However, given that the informant's identity was known to law enforcement and she had a history of providing reliable information, Finch was justified in making the stop once he saw Pradubsri driving a vehicle matching the informant's description in the small, identified area at a time when the informant had reported drugs and two specified weapons would very likely be in the vehicle. *See Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (stating an unverified tip from a known informant may not have been sufficient to establish probable cause but carried enough indicia of reliability to justify a forcible stop and frisk); *Rogers,* 368 S.C. at 535, 629 S.E.2d at 682 (holding reasonable suspicion existed when a police officer stopped a vehicle after receiving information from a known and accountable informant whose reputation could be assessed); *Florida v. J.L.,* 529 U.S. 266, 276, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) ("If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip."). Accordingly, we affirm the circuit court's denial of Pradubsri's motion to suppress the evidence seized during the traffic stop.

## II. Reasonable Doubt Charge

Pradubsri argues the circuit court erred in instructing the jury that reasonable doubt "is doubt which makes an honest, sincere, conscientious juror in search of the truth hesitate to act." He further challenges the circuit court's language instructing the jury to "to evaluate the evidence and determine

that evidence which convinces you of its truth" and that "it is your duty to determine the effect, the value, weight, and the truth of the evidence presented during trial." We find no reversible error.

During the charge conference, Pradubsri moved to exclude any jury charge language referencing a "search for the truth," arguing it improperly shifted the State's burden of proof as forbidden by *State v. Daniels.*[4] After a colloquy, the circuit court agreed to remove this line from the charge. Nevertheless, the circuit court charged the jury, "A reasonable doubt is doubt which makes an honest, sincere, conscientious juror in search of the truth to hesitate to act." Pradubsri objected, but the circuit court overruled the objection and denied a subsequent motion for a mistrial.

 "The standard for review of an ambiguous jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000). "In reviewing jury charges for error, this [c]ourt must consider the [trial] court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Simmons*, 384 S.C. 145, 178, 682 S.E.2d 19, 36 (Ct. App. 2009). "If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." *Id.* "A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *Id.* "To warrant reversal, a [trial] court's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *Id.*

Recently, in *State v. Beaty*, a circuit court used "truth seeking" language in its preliminary jury remarks. Op. No. 27693, —— S.C. ——, —— S.E.2d ——, 2016 WL 7474479 (S.C. Sup. Ct. filed Dec. 29, 2016) (Shearouse Adv. Sh. No. 1 at 13–14), *reh'g granted* Mar. 24, 2017. On appeal, our supreme court explained,

---

4. 401 S.C. 251, 256, 737 S.E.2d 473, 475 (2012) (instructing a trial judge to remove language from his charge that told the jury to reach a verdict that would represent truth and justice for all parties because such language could alter the jury's perception of the burden of proof).

[A] trial court should refrain from informing the jury, whether through comments or through its charge, that its role is to search for the truth, or to find the true facts, or to render a just verdict. These phrases may be understood to place an obligation on the jury, independent of the burden of proof, to determine the circumstances surrounding the alleged crime and from those facts alone render the verdict it believes best serves the jury's perception of justice. We caution trial judges to avoid these terms and any other that may divert the jury from its obligation in a criminal case to determine, based solely on the evidence presented, whether the State has proven the defendant's guilt beyond a reasonable doubt.

*Id.* at 15–16. Nevertheless, the supreme court held the defendant was unable to show prejudice from the comments sufficient to warrant reversal. *Id.* at 16.

*Beaty* echoes the supreme court's previous admonition against such language in *State v. Needs*, 333 S.C. 134, 508 S.E.2d 857 (1998). *Needs* addressed a circumstantial evidence charge and the following reasonable doubt charge:

[A] reasonable doubt is a doubt which makes an honest, sincere, conscientious juror *in search of the truth* in the case hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and to act upon it in the most important of his or her own affairs.

*Id.* at 152, 508 S.E.2d at 866.

*Needs* urged trial courts to avoid using such language but ultimately upheld the conviction because the circuit court reiterated the "beyond a reasonable doubt" standard twenty-six times and the rest of the charge did not contain other disfavored language—particularly the "moral certainty" and "real reason" language found in *State v. Manning.*[5] *See Needs*, 333 S.C. at 154–55, 508 S.E.2d at 867–68.

■ In Pradubsri's case, the circuit court used truth-seeking language almost identical to that challenged in *Needs.* However, the circuit court referenced the "beyond a reasonable doubt" standard at least twenty times during its instruc-

---

5. 305 S.C. 413, 409 S.E.2d 372 (1991).

tions. Further, the instructions did not contain *Manning*'s disfavored language. *See Needs*, 333 S.C. at 155, 508 S.E.2d at 867 (holding a charge was harmless partly because "it did not contain ... troubling language identified in *Manning*"); *see also State v. Kirkpatrick*, 320 S.C. 38, 46, 462 S.E.2d 884, 889 (Ct. App. 1995) (noting a charge was not defective partly because it lacked "language found objectionable in the *Manning* case").

In considering Pradubsri's argument that the challenged language improperly shifted the State's burden of proof, we note the circuit court stated, "The Defendant is not required to prove his innocence. The burden of proof remains on the State to prove guilt beyond a reasonable doubt." Additionally, the circuit court instructed, "The presumption of innocence is like a robe of righteousness placed about the shoulders of the Defendant[,] which remains with the Defendant until it has been stripped from the Defendant by evidence satisfying you of the Defendant's guilt beyond a reasonable doubt." Thus, our review of the record and the entire charge reveals no prejudice sufficient to warrant reversal. *See Beaty*, No. 1 at 16 (reviewing the trial court's comments and the entire trial record and concluding there was no prejudice from the trial court's error sufficient to warrant reversal); *Simmons*, 384 S.C. at 178, 682 S.E.2d at 36 (holding appellate courts must consider the trial court's jury charge as a whole); *id.* ("If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error.").[6]

## III. Remaining Issues

As to the remaining issues, we affirm pursuant to Rule 220(b), SCACR, and the following authorities:

---

6. We find unpreserved Pradubsri's arguments that the circuit court erred in instructing the jury to determine "the effect, the value, weight and the truth of the evidence presented" and that it was the jury's duty to "determine that evidence which convinces you of its truth" because Pradubsri's trial objection related only to the "search for the truth" language. However, even if the other "truth" references are considered, the instructions as a whole adequately covered the law and do not warrant reversal. *See Simmons*, 384 S.C. at 178, 682 S.E.2d at 36.

■ 1. As to Pradubsri's argument that the circuit court erred in refusing to reveal the informant's identity, we find the circuit court acted within its discretion. *See State v. Humphries*, 354 S.C. 87, 90, 579 S.E.2d 613, 615 (2003) ("[I]f the informant is an active participant in the criminal transaction and/or a material witness on the issue of guilt or innocence, disclosure of his identity may be required depending upon the facts and circumstances. On the other hand, an informant's identity need not be disclosed where he possesses only a peripheral knowledge of the crime or is a mere 'tipster' who supplies a lead to law enforcement."); *id.* at 90, 579 S.E.2d at 614–15 ("The burden is upon the defendant to show the facts and circumstances entitling him to the disclosure."); *id.* at 90, 579 S.E.2d at 615 (holding a trial court did not abuse its discretion by failing to require disclosure of an informant's name).

■ 2. As to Pradubsri's argument that the circuit court erred in refusing to grant a directed verdict on the proximity charge, we find the charge was correctly submitted to the jury. *See State v. Cherry*, 361 S.C. 588, 593, 606 S.E.2d 475, 477–78 (2004) ("When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight."); *id.* at 593–94, 606 S.E.2d at 478 ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury.").[7]

3. As to Pradubsri's argument that the circuit court erred in allowing Martin to testify about Pradubsri's prior bad acts,

---

7. Further, we note the version of the statute that governed the proximity charge at the time of Pradubsri's arrest did not contain a knowledge requirement and made it a crime to "unlawfully possess with intent to distribute, a controlled substance while in, on, or within a one-half mile radius of the grounds of a[n] ... elementary ... school...." S.C. Code Ann. § 44-53-445 (2002). The statute was rewritten in 2010 and now requires that a person "have knowledge that he is in, on, or within a one-half mile radius of the grounds of a public or private elementary ... school...." S.C. Code Ann. § 44-53-445(B)(1) (Supp. 2016). However, this new requirement has no bearing on Pradubsri's case. *See State v. Henkel*, 413 S.C. 9, 11 n.4, 774 S.E.2d 458, 460 n.4 (2015) (stating a statute that was amended in 2009 was not applicable when the defendant's arrest occurred in 2008).

we find the circuit court did not abuse its discretion in allowing the testimony. *See State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion."); *State v. Sweat*, 362 S.C. 117, 127, 606 S.E.2d 508, 513 (Ct. App. 2004) ("Evidence is admissible if 'logically relevant' to establish a material fact or element of the crime; it need not be 'necessary' to the State's case in order to be admitted.").

## Conclusion

For the foregoing reasons, Pradubsri's convictions are **AFFIRMED.**

LOCKEMY, C.J., and KONDUROS, J., concur.