290 S.C. 488 (1986)
351 S.E.2d 570
The STATE, Petitioner
v.
Timothy Dewayne COX, Respondent.
22638
Supreme Court of South Carolina.
Heard October 9, 1986.
Decided December 15, 1986.
*489 Attorney Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., and Norman Mark Rapoport, Columbia, and Sol. Joseph J. Watson, Greenville, for petitioner.
Chief Atty. William Isaac Diggs, of South Carolina Office of Appellate Defense, Columbia, for respondent.
*490 Heard Oct. 9, 1986.
Decided Dec. 15, 1986.
Per Curiam:
This Court issued a writ of certiorari to review the decision of the Court of Appeals in State v. Cox, 287 S.C. 260, 335 S.E. (2d) 809 (Ct. App. 1985).
As modified, we affirm.
According to the State's case, Richard Armstrong (Armstrong) employed Respondent, Timothy Dewayne Cox (Cox), to kill one Gary Eades, with whose wife Armstrong had become romantically involved. Shortly after the murder Armstrong confessed to the police, telling them that the murder weapon, a shotgun, was in the trunk of Cox's automobile.
The police went to Cox's house to arrest him, but he was not there. Even though Cox's car was parked in the yard, the police made no search of it at that time.
The police thereafter arrested Cox at Armstrong's house, reciting to him Miranda warnings. Cox replied, "I'll tell you about it when I talk to my lawyer." Thereafter, a detective initiated the following conversation with Cox: "Richard Armstrong told me that the ... shotgun that was used to shoot the Eades boy with is in the trunk of your automobile; is it there?" Cox responded that it was, signed a consent to search form and gave the police his keys. The shotgun was found in the trunk.
Over objection by Cox, he and Armstrong were prosecuted in a consolidated trial. Armstrong was tried as an accessory before and after the fact of murder, and Cox was tried as the principal in the murder. Both were convicted.
Two issues are presented here, first, whether the shotgun was obtained as a result of an illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution; and second, whether the trial judge erred by charging the jury that it could not find Armstrong guilty unless it also found Cox guilty.
The Court of Appeals ruled that police questioning of Cox regarding the gun violated his previously asserted right to counsel. Even so, the Court reasoned that the "independent source" rule was inapplicable to the facts of the case. The *491 Court concluded, however, that the rule was not a waiver of Cox's protection from illegal searches, and proceeded to analyze the seizure of the shotgun under Fourth Amendment standards.
In a plurality opinion the Court held the "automobile exception" to the warrant requirement was not applicable because Cox's car was found at his residence. The Court, relying upon California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed. (2d) 406 (1985), concluded that "an automobile found parked at a person's home is protected from warrantless searches." 287 S.C. at 264, 335 S.E. (2d) at 811.
We disagree.
The automobile exception was first articulated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Since Carroll, the doctrine has been applied on a case-by-case basis to various sets of facts. See generally cases cited in Annot., 66 L.Ed. (2d) 882, Validity of Warrantless Search of Motor Vehicles.
The two bases for the exception are: (1) the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained; and (2) the lessened expectation of privacy in motor vehicles which are subject to governmental regulation.
The source of the Court of Appeals' ruling is the following language from Carney:
When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes  temporary or otherwise  the two justifications for the vehicle exception come into play. [Emphasis supplied].
471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed. (2d) at 414.
The plurality interpreted this to mean that the automobile exception does not apply to any vehicle parked at a residence. However, Carney dealt with a motor home, or camper vehicle. Even though the language cited above may appear to apply to all motor vehicles, a close reading, in context, makes it clear that the Court was addressing only the inapplicability of the exception as to motor homes set up on a site and used as a residence. In the same paragraph from which the above sentence is cited, the Carney Court *492 states "there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulations inapplicable to a fixed dwelling." [Emphasis supplied.] 471 U.S. at 393, 105 S.Ct. at 2070, 85 L.Ed. (2d) at 414. The emphasized pronoun "its" in this sentence clearly refers to a motor home.
No prior Supreme Court cases have recognized a distinction between vehicles parked in public and private places. Indeed, such a distinction would not harmonize with the Court's reasoning in automobile search cases.
The Carney Court makes clear that under the automobile exception, probable cause alone is sufficient to justify a warrantless search. As the Court stated, "the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches [of vehicles] without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." [Emphasis supplied.] 471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed. (2d) at 414. That is, the inherent mobility of automobiles provides the requisite exigency.
Moreover, there were additional exigencies in this case. Upon learning from Armstrong that the gun was in the trunk of Cox's car, officers attempted to obtain a warrant in the middle of the night, but were unable to locate a magistrate. Cox's brother, Jerry, who had attempted to alert Cox of his imminent arrest, was at the house at which the car was parked. As one of the officers who conducted the search testified, "Jerry was running around trying to cut off, you know, everything we was doing. He was in an automobile. We had to have the gun ... I was going to get the gun. I felt like it was going to be gone, so that's what I did."
We hold the seizure of the shotgun did not violate the Fourth and Fourteenth Amendments.
As to the second issue, Cox asserts error in the following jury charge:
Now, as to these indictments, as to Timothy Dewayne Cox, it can be one of two verdicts, guilty or not guilty. As to Richard James Armstrong, if you find the defendant Timothy Cox, not guilty, you cannot have an accomplice, therefore this would be not guilty, by law.
*493 Cox contends the instruction: (1) infringed upon his right to a fair and impartial jury determination of his guilt independent of Armstrong's guilt and (2) misstated the law regarding criminal liability of an accessory before and after the fact.
While the Court of Appeals' plurality opinion expressly did not rule upon the propriety of this charge, Judge Bell's concurring opinion reasoned that the charge was erroneous and prejudicial. We agree.
The instruction was an incorrect statement of the law of criminal liability of an accessory. In State v. Massey, 267 S.C. 432, 229 S.E. (2d) 332 (1976) we held that an accessory could be convicted notwithstanding the prior acquittal of the alleged principal, or even notwithstanding the identity of the principal was unknown. That is, an accessory may be convicted as long as sufficient evidence is adduced to show that some principal committed the underlying substantive crime. See also Standefer v. United States, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed. (2d) 689 (1980) [defendant accused of aiding and abetting may be convicted even though named principal has been acquitted]. We now hold this same rule applies where the accessory and alleged principal are tried together. As we stated in State v. Price, 278 S.C. 266, 294 S.E. (2d) 426 (1982):
It is easy to conceive of a case in which the person who actually committed a homicide could not or might not be convicted by reason of incapacity or some other valid defense, but where [the guilt of] the person who procured the commission of the crime and/or the accessory's culpability is clear. [Parenthesis and emphasis supplied.]
278 S.C. at 268, 294 S.E. (2d) at 428.
We disagree with the State's contention that the instruction was not prejudicial under the facts of this case.
Although disputed by Armstrong in his testimony, some evidence showed that Armstrong, not Cox, shot the victim. The jury could have determined Cox to be not guilty. However, Armstrong, in his own testimony, confessed to some degree of culpability in procuring the victim's death. Thus, the jury may have faced a dilemma: to *494 acquit Cox, it also would have to acquit Armstrong who, by his own admission, was guilty as an accessory.
Accordingly, we reverse Cox's conviction for murder and remand for a new trial.
Affirmed in part; reversed in part and remanded.