649 S.E.2d 479

**The STATE, Respondent,**

v.

**Levell WEAVER, Petitioner.**

**No. 26366.**

Supreme Court of South Carolina.

Heard Feb. 13, 2007.

Decided July 30, 2007.

Rehearing Denied Sept. 6, 2007.

314

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of Columbia, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for respondent.

Justice MOORE.

Petitioner was convicted of murder and possession of a weapon during commission of a violent crime. He was sentenced to concurrent imprisonment terms of thirty years for murder and five years for possession of a weapon during a violent crime. His convictions and sentences were upheld on direct appeal by the Court of Appeals. *State v. Weaver,* 361 S.C. 73, 602 S.E.2d 786 (Ct.App.2004). We affirm as modified.

## FACTS

On June 23, 1999, Marion McKnight was shot thirteen times outside a club and died at the scene. Investigator Sandy Thompson arrived up to an hour after the shooting occurred. Thompson spoke with witnesses still at the club and his investigation led him to search for petitioner.

Thompson received information that petitioner was at the home of his cousin, Arnold Weaver. Thompson and other investigators arrived at Arnold's home and found the Jeep, which petitioner was driving earlier that night, in the back yard. Arnold testified petitioner had been at his home, and had asked for a change of clothes, some bleach, and a garbage bag. He left Arnold's home less than an hour later.[1]

Upon finding the Jeep, Thompson and another officer testified Thompson opened the door of the Jeep. After finding the

---

1. Petitioner turned himself in during the early morning hours of June 24.

inside of the Jeep was wet and smelled of bleach, Thompson shut the door. The investigators found "a bag of wash" that smelled like bleach on a pump house near the Jeep. Based on this evidence, the Jeep was impounded and towed to the county jail.

After the Jeep had been impounded, a SLED agent processed the Jeep. The agent testified he found blood in the Jeep in several places, including the interior of the driver's side door, just below the rear window on the driver's side, on a chamois cloth found on the back seat of the car, on a keychain found in the ignition, and on the gear shift. The blood matched that of the victim. Further, the rear cargo area was wet and smelled of bleach. This area was positive for blood as well but could not be tested.

Prior to trial, defense counsel moved to suppress the evidence taken from the Jeep. The State noted officers obtained a search warrant before searching the Jeep for blood evidence but after it was impounded in a secure location. However, the return was never made on the warrant as required by S.C.Code Ann. § 17–13–140 (2003). The State indicated they were not relying on the search warrant, but were instead contending it was a valid warrantless search. Therefore, the trial judge analyzed the question of the propriety of the search of the Jeep as if no warrant had been obtained. The trial judge preliminarily ruled the seizure of the Jeep was proper without a warrant, that the search was lawful, and that the evidence was admissible.

Prior to the introduction of Agent Lambert's testimony regarding the blood evidence, an *in camera* hearing was held to revisit the admissibility of the testimony. Following the hearing, the judge denied petitioner's motion to suppress. He stated there was no requirement that a warrantless search occur contemporaneously with the seizure for the automobile exception to the Fourth Amendment to apply. Because he found the warrantless search was proper, the trial judge refused to rule as to whether the officers' failure to provide a return rendered the search warrant ineffective. The Court of Appeals affirmed.

## ISSUE

Did the Court of Appeals err by upholding the trial court's refusal to suppress evidence found in the vehicle petitioner was driving?

## DISCUSSION

Petitioner argues the evidence found in the Jeep should have been suppressed. He contends the automobile exception to the Fourth Amendment warrant requirement is inapplicable in this case and, therefore, the State was required to obtain and properly execute a search warrant prior to obtaining evidence from the Jeep. Petitioner states that because the State did not produce a return as required under S.C.Code Ann. § 17–13–140 (2003), the search warrant was invalid and the search of the Jeep was unlawful. In addition, he argues the search violated his rights under Article 1, § 10, of the South Carolina Constitution, because that section provides greater protection than that provided by the Fourth Amendment of the United States Constitution.

 When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm the trial judge's ruling if there is any evidence to support the ruling. *State v. Missouri*, 361 S.C. 107, 603 S.E.2d 594 (2004). The appellate court will reverse only when there is clear error. *Id.*

A. *Was the warrantless search of the Jeep proper pursuant to the automobile exception?*

 Evidence seized in violation of the Fourth Amendment must be excluded from trial. *State v. Freiburger,* 366 S.C. 125, 620 S.E.2d 737 (2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2287, 164 L.Ed.2d 813 (2006). Generally, a warrantless search is *per se* unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures. *Id.* However, a warrantless search will withstand constitutional scrutiny where the search falls within one of several well-recognized exceptions to the warrant requirement. *Id.* One such exception is the automobile exception. *State v. Bailey,* 276 S.C. 32, 274 S.E.2d 913 (1981). The burden is upon the prosecution to establish probable cause and the existence of circumstances constituting an exception to

the general prohibition against warrantless searches. *State v. Freiburger, supra.*

Pursuant to the automobile exception, if there is probable cause to search a vehicle, a warrant is not necessary so long as the search is based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained. *Maryland v. Dyson,* 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). The automobile exception to the search warrant requirement is based on: (1) the ready mobility of automobiles and the potential that evidence may be lost or destroyed before a warrant is obtained and (2) the lessened expectation of privacy in motor vehicles which are subject to government regulation. *State v. Cox,* 290 S.C. 489, 351 S.E.2d 570 (1986). The automobile exception does not contain a separate exigency requirement. *Maryland v. Dyson, supra.* If a vehicle is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more. *Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

In the instant case, there was probable cause to conduct a warrantless search of the Jeep. Investigators knew that petitioner, a suspect in McKnight's murder, had been seen driving the Jeep around the time of the murder. Upon finding the Jeep, it seemed apparent there had been an attempt to destroy evidence given the Jeep's interior was wet and smelled of bleach. Therefore, upon finding the Jeep, the investigators could have conducted the search at that time; however, they chose to impound the vehicle.

The fact investigators chose to wait to search the Jeep after it had already been impounded does not affect the propriety of the warrantless search because there is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (upholding warrantless search that occurred three days after seizure). *See also Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (warrantless search of vehicle, which was impounded and in police custody, conducted several hours after valid initial search conducted at time of defen-

dant's arrest, was proper); *Cooper v. State of California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (it is no answer to say the police could have obtained a search warrant, for the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable). The justification to conduct such a warrantless search does not vanish once the car has been immobilized. *United States v. Johns, supra.*

Accordingly, the warrantless search meets the automobile exception to the Fourth Amendment. However, before concluding the evidence recovered from the Jeep is admissible, we must examine petitioner's argument that our state constitution provides him with greater protection.

B. *Does the State constitution provide greater protection than the United States Constitution?*

Petitioner argues that the search and seizure of the Jeep violates the state constitution because of the location of the Jeep when it was seized, *i.e.* in the back yard of a private residence. He argues the invasion of his privacy was not reasonable based on that fact.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. The South Carolina Constitution also provides a safeguard against unlawful searches and seizures. *State v. Forrester*, 343 S.C. 637, 541 S.E.2d 837 (2001) (citing S.C. Const. art. I. § 10). The relationship between the two constitutions is significant because "[s]tate courts may afford more expansive rights under state constitutional provisions than the rights which are conferred by the Federal Constitution." *Id.* (quoting *State v. Easler*, 327 S.C. 121, 131, n. 13, 489 S.E.2d 617, 625, n. 13 (1997)). Therefore, this Court may interpret the state protection against unreasonable searches and seizures in such a way as to provide greater protection than the federal Constitution. *Id.*

In addition to language that mirrors the Fourth Amendment, S.C. Const. art. 1 § 10 contains an express

protection of the right to privacy: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures *and unreasonable invasions of privacy* shall not be violated. . . ." *State v. Forrester, supra* (emphasis added). By articulating a specific prohibition against "unreasonable invasions of privacy," the people of South Carolina have indicated that searches and seizures that do not offend the federal Constitution may still offend the South Carolina Constitution. *Id.* Accordingly, the South Carolina Constitution favors an interpretation offering a higher level of privacy protection than the Fourth Amendment. *Id.*

 The question is whether this privacy provision goes so far as to require a warrant before the search and seizure of a vehicle located in the back yard of a private residence. We find there is no meaningful distinction to be made between vehicles parked in public and private places.[2] *See State v. Cox,* 290 S.C. 489, 351 S.E.2d 570 (1986) (finding seizure of shotgun from trunk of murder defendant's vehicle, which was parked in yard of his house at time of search, was valid under automobile exception to warrant requirement). The focus in the state constitution is on whether the invasion of privacy is reasonable, regardless of the person's expectation of privacy in the vehicle to be searched. Once the officers have probable cause to search a vehicle, the state constitution's requirement that the invasion of one's privacy be reasonable will be met. We find the invasion of petitioner's privacy was reasonable because the officers had probable cause to search where petitioner had apparently used the Jeep to leave the scene of a murder and attempted to destroy evidence of the crime that was located inside the Jeep. Accordingly, the search of the Jeep satisfied the requirements of the South Carolina Constitution.

---

2. The concurrence asserts that search and seizure cases analyzed under the Fourth Amendment have made distinctions between vehicles parked in public and private places. However, there has never been a clear statement by the United States Supreme Court that a warrant is required before a vehicle is searched in a private place. In fact, the Fourth Circuit has stated there should not be a bright-line rule that the automobile exception may never apply when a vehicle is stationed on private, residential property. *United States v. Brookins,* 345 F.3d 231, 237 (4th Cir.2003).

## C. *Was the Search Warrant Valid?*

Because the automobile exception applies in this case and the warrantless search of the vehicle was proper, it is unnecessary to address whether the warrant was invalid because a return was not made. However, we address this issue to correct the Court of Appeals' ruling on this issue.

 South Carolina Code Ann. § 17–13–140 (2003) requires search warrants to be executed and return made within ten days after the date of the warrant.[3] The failure to observe the ten-day requirement for the execution and return of a warrant, a ministerial requirement, does not necessarily void the warrant. *State v. Wise*, 272 S.C. 384, 252 S.E.2d 294 (1979). The warrant will be invalidated only if the defendant can show he was prejudiced by the failure. *Id. See also State v. Mollison*, 319 S.C. 41, 459 S.E.2d 88 (Ct.App.1995) (failure to comply with inconsequential ministerial requirements of the statute does not require suppression in the absence of prejudice to the defendant).

 The Court of Appeals held the State's failure to produce a return constituted more than a ministerial error. We find the Court of Appeals erred because petitioner did not show he was prejudiced by the State's failure to comply with the return requirement. *See State v. Wise, supra* (warrant not voided where appellant failed to show he was prejudiced by State's failure to return warrant to issuing magistrate within ten-day period); *State v. Mollison, supra* (evidence not suppressed where appellants did not argue they were prejudiced in any way by the failure to return the warrant within ten days). Accordingly, the State's failure to comply with the statutory ministerial requirement does not void the warrant and the evidence can not be excluded on this ground.

---

3. " . . . Any warrant issued hereunder shall be executed and return made only within ten days after it is dated. The officer executing the warrant shall make and deliver a signed inventory of any articles seized by virtue of the warrant, which shall be delivered to the judicial officer to whom the return is to be made, and if a copy of the inventory is demanded by the person from whose person or premises the property is taken, a copy of the inventory shall be delivered to him. . . ." S.C.Code Ann. § 17–13–140 (2003).

## CONCLUSION

We find that if the requirements of probable cause and ready mobility are met, then the search is permissible pursuant to the State constitution and the United States Constitution. Because we find the search was a proper warrantless search, it is unnecessary to determine whether the State's failure to make a return rendered the warrant ineffective. However, we note that where the defendant fails to argue he was prejudiced by the State's failure to comply with the return requirement, the warrant will not be voided and evidence cannot be excluded on that ground. Accordingly, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

WALLER and BURNETT, JJ., concur. PLEICONES, J., concurring in a separate opinion in which TOAL, C.J., concurs.

Justice PLEICONES.

I concur in the majority's conclusion that the warrantless search and seizure in this case did not violate the Fourth Amendment of the United States Constitution or Article I, section 10 of the South Carolina Constitution which prohibits unreasonable invasions of privacy. I also agree that the State's failure to produce a return to the search warrant did not invalidate the warrant in this case. I write separately, however, because I disagree with the majority's analysis of the vehicle seizure under the South Carolina Constitution.

The automobile exception to the search warrant requirement of the Fourth Amendment of the United States Constitution is based on: (1) the ready mobility of automobiles and (2) the lessened expectation of privacy in motor vehicles which are subject to government regulation. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The South Carolina Constitution specifically prohibits "unreasonable invasions of privacy," and this Court has stated, as the majority recognizes, that our constitution "favors an interpretation offering a higher level of privacy protection than the Fourth Amendment." *State v. Forrester*, 343 S.C. 637, 541 S.E.2d 837 (2001).

In determining whether South Carolina's privacy provision requires a warrant before the search and seizure of a vehicle located in the backyard of a private residence, the majority focuses on one justification for the automobile exception: the inherent mobility of the vehicle. This analysis is incomplete. We must further analyze the impact of this provision on the second prong of a Fourth Amendment automobile analysis, that is, the expectation of privacy in a private automobile. A holding that "the inherent mobility of the vehicle is all that is required to satisfy the state constitution" implies a lower degree of protection than that provided by the Fourth Amendment when addressing warrantless searches and seizures. This conflicts with our prior cases. *See Forrester, supra.*

Furthermore, the majority's reliance on *State v. Cox,* 290 S.C. 489, 351 S.E.2d 570 (1986), is, in my opinion, misplaced. The search and seizure issue in *Cox* was analyzed solely under the Fourth Amendment and did not discuss Article I, section 10 of the South Carolina Constitution. Moreover, search and seizure cases analyzed under the Fourth Amendment have made distinctions between vehicles parked in public and private places. *See G.M. Leasing Corp. v. U.S.,* 429 U.S. 338, 351–52, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (holding the warrantless seizure of vehicles did not violate the Fourth Amendment because "[t]he seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasion of privacy."); *Florida v. White,* 526 U.S. 559, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) (noting the distinction between a warrantless seizure in an open area and a seizure made on private premises and concluding that because the police seized respondent's vehicle from a public area, the warrantless seizure did not involve any invasion of respondent's privacy); and *Binder v. Redford Tp. Police Dept.,* 93 Fed.Appx. 701 (6th Cir.2004) ("Although probable cause suffices for the search or seizure of vehicles parked on public property [or even private property that is accessible to the public], no Supreme Court decision allows warrantless entry into areas of a home or business where the owner has a reasonable expectation of privacy simply because the police are in search of an automobile.") (citing *G.M. Leasing Corp., supra* ).

Analysis of the facts of this case with our privacy provision in mind reveals no state constitutional violation. Although one's expectation of privacy in his automobile increases when that automobile is parked in the backyard of his private residence, the petitioner in this case was not the owner of the Jeep that was seized.[4] More importantly, the vehicle was not parked at petitioner's residence.

Our state constitution's provision protecting unreasonable invasions of privacy necessarily requires some analysis of the privacy interests involved when a warrantless seizure is made on private property. However, petitioner cannot show he had a reasonable expectation of privacy in the seized Jeep. Accordingly, I concur in the result reached by the majority.

TOAL, C.J., concurs.

---

4. The record reveals that petitioner was one of several family members who had permission to use the Jeep.