# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jonathan Xavier Miller, Petitioner.

Appellate Case No. 2016-000862

ON WRIT OF CERTIOARI TO THE COURT OF
APPEALS

Appeal from Richland County
Doyet A. Early III, Trial Court Judge

Opinion No. 27798
Heard April 12, 2017 – Filed May 9, 2018

**AFFIRMED**

Deputy Chief Appellate Defender Wanda H. Carter, of
Columbia, for Petitioner.

Attorney General Alan Wilson, Senior Assistant Deputy
Attorney General J. Benjamin Aplin, Solicitor Daniel E.
Johnson, of Columbia, and Brent H. Arant, of North
Charleston, all for Respondent.

**JUSTICE FEW:** Jonathan Xavier Miller appeals his conviction for possession of
crack cocaine. He argues the trial court erred in denying his motion to suppress drug

evidence seized during an inventory search of his vehicle after he was arrested for driving with a suspended license. We find the trial court correctly denied the motion, and affirm.

## I.        Facts and Procedural History

In January 2013, Columbia Police Department Officers James Westbury and Shaun McDonald were in the Rosewood area of Columbia investigating criminal activity unrelated to this case. During their investigation, a resident of the area informed the officers that an older-model, silver and green Chevrolet with large rims had been making frequent stops at a location known for drug activity.

Later that day, Officer Westbury and Officer McDonald—driving separately— observed a vehicle fitting that description pull into a gas station parking lot. Both officers turned their vehicles around and followed the silver and green Chevrolet as it left the gas station and traveled along several streets. The officers did not activate their blue lights or sirens. The Chevrolet came to a stop in the private driveway of an apartment complex, so the officers parked on the street and exited their vehicles.

After Miller got out of the driver's seat, the officers approached him to ask for identification. Miller told the officers he did not have his driver's license with him, but gave them his name and date of birth. When the officers provided Miller's information to the Department of Motor Vehicles, they discovered his license was suspended, so they arrested Miller for driving with a suspended license in violation of section 56-1-460 of the South Carolina Code (2018). The officers searched Miller incident to his arrest and found an electronic scale in one of his pockets. They asked for consent to search the Chevrolet, but Miller refused.

While the officers were arresting Miller, his girlfriend—Nikea Berry—came out of one of the apartments. She told the officers she lived there, and Miller was visiting her. The officers also learned the owner of the Chevrolet was Cassandra Jones, who did not live at the apartment complex and was not present at the scene.

Columbia Police Department's standard procedures permit its officers to tow vehicles when the driver is arrested away from his residence and there is no responsible party present at the scene. The Department's written policy requires police officers to conduct an inventory search of the passenger compartment of a towed vehicle. Because Miller was arrested away from his residence, and because Jones was not present at the scene, the officers called a towing company to tow the

Chevrolet. Before the tow truck arrived, the officers conducted an inventory search and found just under five grams of crack cocaine beneath the driver's seat.

A grand jury indicted Miller for possession with intent to distribute crack cocaine. Prior to his trial, Miller moved to suppress the drug evidence arguing the officers did not have authority to tow the Chevrolet from the private driveway, they were not authorized to conduct the inventory search, and thus the seizure of the drugs violated the Fourth Amendment. The trial court denied the motion to suppress.

At trial, the jury found Miller not guilty of possession with intent to distribute, but convicted him of simple possession of crack cocaine, which was his third offense. The trial court sentenced Miller to nine years in prison. *See* S.C. Code Ann. § 44-53-375(A) (2018) ("For a third or subsequent offense [of possession of cocaine base], the offender is guilty of a felony and, upon conviction, must be imprisoned not more than ten years . . . ."). Miller appealed to the court of appeals, which affirmed his conviction in an unpublished opinion. *State v. Miller*, Op. No. 2016-UP-040 (S.C. Ct. App. filed Jan. 20, 2016). Miller filed a petition for a writ of certiorari, which we granted.

## II. Analysis

The issue on appeal is whether it was reasonable under the Fourth Amendment for the officers—acting pursuant to their department policy—to seize, search, and then tow the vehicle Miller was driving when he was arrested on private property away from his residence and the owner of the vehicle was not present. The facts relevant to this appeal are not in dispute, so we address the issue as a question of law, which we review de novo. *See State v. Adams*, 409 S.C. 641, 647, 763 S.E.2d 341, 344 (2014) (stating "this Court reviews questions of law de novo").

### A. The Fourth Amendment and Inventory Searches

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S. Ct. 2523, 2527, 37 L. Ed. 2d 706, 713 (1973). "Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case." *S. Dakota v. Opperman*, 428 U.S. 364, 375, 96 S. Ct. 3092, 3100, 49 L. Ed. 2d 1000, 1009 (1976). In most circumstances, evidence seized in violation of

the Fourth Amendment's reasonableness standard must be excluded from trial. *State v. Weaver*, 374 S.C. 313, 319, 649 S.E.2d 479, 482 (2007).

"Generally, a warrantless search is per se unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures." *Id.* However, a warrantless search can be reasonable if it falls under one of the exceptions to the warrant requirement. *Id.* One of those exceptions is an inventory search conducted according to standard police procedures. *Robinson v. State*, 407 S.C. 169, 185, 754 S.E.2d 862, 870 (2014) (stating "if police officers are following their standard procedures, they may inventory impounded property without obtaining a warrant" (citing *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S. Ct. 738, 742, 93 L. Ed. 2d 739, 747 (1987))).

"For an inventory search to be valid, the vehicle searched should first be in the valid custody of the law enforcement officers conducting the inventory." *United States v. Brown*, 787 F.2d 929, 931-32 (4th Cir. 1986) (citing *Opperman*, 428 U.S. at 374, 96 S. Ct. at 3099, 49 L. Ed. 2d at 1008). "The question . . . is . . . whether the police officer's decision to impound was reasonable under the circumstances." *Brown*, 787 F.2d at 932; *see also United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) ("An inventory search of an automobile is lawful (1) where the circumstances reasonably justified seizure or impoundment, and (2) law enforcement conducts the inventory search according to routine and standard procedures designed to secure the vehicle or its contents.") (citing *Bertine*, 479 U.S. at 371-76, 107 S. Ct. at 741-43, 93 L. Ed. 2d. at 745-48).

### B.      Reasonableness of the Impoundment

The first step in our analysis is to determine whether Officers Westbury and McDonald's decision to seize Miller's vehicle violated the Fourth Amendment. We find the decision was reasonable under the circumstances, and thus there was no violation.

We begin our explanation with the fact the officers seized and towed the vehicle pursuant to lawful authority. They acted in accordance with the requirements set forth in a written police department policy, which was adopted pursuant to a City of Columbia ordinance, which was passed under authority of a state statute, which the General Assembly enacted pursuant to the Home Rule provisions of the Constitution of South Carolina.

Article VIII, section 9 of our Constitution provides, "The structure and organization, powers, duties, functions, and responsibilities of the municipalities shall be established by general law," and article VIII, section 17 provides, "The provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution." Pursuant to the authority granted it in article VIII, section 9, our General Assembly enacted section 5-7-30 of the South Carolina Code (Supp. 2017), which provides,

> Each municipality of the State . . . may enact regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State, including the exercise of powers in relation to roads, . . . law enforcement, . . . and order in the municipality or respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality or for preserving . . . peace, order, and good government in it . . . .

Pursuant to section 5-7-30, the City of Columbia enacted section 10-31 of its Code of Ordinances granting the chief of police broad powers over law enforcement in the City. Section 10-31 provides,

> The chief of police, subject to the city manager, shall have administrative supervision over the police department. He shall be responsible for the enforcement of state laws and city ordinances, . . . establish training programs, . . . [and] establish departmental rules and regulations . . . .

In turn, the chief of the Columbia Police Department adopted the Columbia Police Department's Policy Manual, which provides in section 7.2 of the Auxiliary Traffic Services chapter,

> Departmental personnel may also tow the following vehicles:
> - Any vehicle from which an officer makes an arrest and there is no responsible party to whom the arrestee can turn over the possession of the vehicle.

During a hearing on the motion to suppress, the State presented the testimony of the arresting officers to further explain the department policy and their decision to seize and tow the vehicle. Officer McDonald testified, "The vehicle needs to be towed . . . to make sure that nothing happens to the vehicle to cover our end." The trial court asked Officer McDonald, "What authority did you . . . rely upon in removing [the Chevrolet] from the private driveway?" McDonald replied, "Like I said, sir, to my knowledge, it wasn't his residence, and I was trained from day one that if the person gets arrested and it's not their residence that the vehicle gets towed." The solicitor asked Officer Westbury, "When discerning the responsible party to . . . possibly leave the car with, what factors do you look at?" Westbury replied, "It's . . . going to come up to the actual vehicle owner where the vehicle owner is on the scene or whether it's something to where I'm given information as far as where they want it left." When the trial court asked Officer Westbury why the Chevrolet was towed, he said, "Due to the fact that he wasn't the vehicle owner, and the owner wasn't on the scene." Officer Westbury also testified, "It's per the policy."

We read the towing provision of the policy to include three requirements that must be met before the vehicle may be towed: (1) the officer makes the arrest from the vehicle, (2) the arrest occurs away from the arrestee's residence, and (3) the owner is not present at the scene and no other person is present who is authorized to take responsibility for the vehicle. Because all three of these requirements were met in this case, we find the officers complied with the governing policy, and the seizure was reasonable under the Fourth Amendment.

Our decision is consistent with other decisions addressing the legality of police seizure of a vehicle on private property. In *Brown*, for example, a police officer pulled the defendant's vehicle after observing the vehicle "weaving down the highway." 787 F.2d at 930. Brown pulled into a private parking lot used by several nearby businesses and apartments. *Id.* The police officer determined Brown was intoxicated, and arrested him for driving under the influence of alcohol. *Id.* The police officer impounded the car, and then conducted an inventory search during which he found an unregistered firearm with an illegal silencer. 787 F.2d at 931. The district court denied Brown's motion to suppress the evidence seized as a result of the inventory search. *Id.*

The facts of *Brown* are similar to this case in several important respects. First, both arrests were made from the vehicle after the officer observed the suspect driving in a manner the officer later determined to be illegal—driving with a suspended license

in this case, and driving under the influence in *Brown*. Second, both arrests were made away from the suspect's residence, in a private parking lot. The facts of *Brown* are also similar to this case in that Brown's "girlfriend lived in an apartment over one of the businesses adjoining the parking lot," and there were no other passengers in the car who could drive it.[1]  *Id.*  The facts of *Brown* are dissimilar in that Brown owned his vehicle, and thus could give permission to the officer to leave it there, and—more importantly—the officer in *Brown* did not base his decision to tow Brown's vehicle on any police procedure that set forth standardized criteria governing when to tow a vehicle.[2]  These dissimilarities make *Brown* a weaker case for a reasonable seizure under the Fourth Amendment than this case. Nevertheless, the Fourth Circuit found the officer's decision to seize and tow the vehicle was reasonable, stating,

> we are of opinion that the police officer in this case could reasonably have impounded Brown's vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was parked. Therefore, we are of opinion that the police were in lawful custody of Brown's car at the time of their inventory of its contents.

787 F.2d at 932-33 (citation omitted). Rejecting Brown's argument that the officers could have left the car with Brown's girlfriend, the Fourth Circuit stated, "The police could have done so. That they did not, however, does not render their impoundment of Brown's car unreasonable." 787 F.2d at 932 (citing *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S. Ct. 2605, 2610, 77 L. Ed. 2d 65, 72 (1983)).

Turning our attention back to this case, the limitations imposed on an officer's discretion to seize and tow a vehicle by the three requirements of section 7.2 of the Auxiliary Traffic Services chapter of the Columbia Police Department's Policy

---

[1] There were three passengers in Brown's vehicle, but the court noted "everyone in Brown's car had been drinking." *Id.*

[2] Although the Fourth Circuit stated the police had an "official policy for the inventory of impounded vehicles," 787 F.2d at 931 n.2, there is no reference to any policy governing the impoundment itself.

Manual are precisely the sort of "standardized criteria" courts have consistently looked to in determining whether the seizure and towing of a vehicle is reasonable under the Fourth Amendment. *See Bertine*, 479 U.S. at 376, 107 S. Ct. at 743, 93 L. Ed. 2d at 748 (recognizing the validity of police discretion to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity"); *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1, 6 (1990) (explaining that the requirement of standardized criteria "is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence").

In *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015), for example, the Tenth Circuit explained the necessity "that standardized criteria generally must confine officer discretion to impound vehicles" before a seizure may be found reasonable under the Fourth Amendment. 796 F.3d at 1247. The *Sanders* court affirmed the suppression of evidence seized from an impounded vehicle in part because the applicable municipal code did not authorize "impoundment from *private* lots," even though it "explicitly authorizes the impoundment of vehicles from *public* property." 796 F.3d at 1250.

In *State v. Pogue*, 868 N.W.2d 522 (N.D. 2015), a case relied on by the dissent, the Supreme Court of North Dakota stated,

> The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy—even a policy that provides officers with discretion as to the proper course of action to take—and the decision is made "on the basis of something other than suspicion of evidence of criminal activity."

868 N.W.2d at 528 (quoting *United States v. Le*, 474 F.3d 511, 514 (8th Cir. 2007), which quoted *Bertine*, 479 U.S. at 375, 107 S. Ct. at 743, 93 L.Ed.2d at 748). The *Pogue* court found the impoundment of the vehicle in that case violated the Fourth Amendment as an unreasonable seizure because there were no limitations on the officer's discretion to seize and tow the vehicle, and "the State has failed to meet its burden of establishing the reasons for impounding a vehicle were anything other than for an investigative function." 868 N.W.2d at 531. The court specifically noted, "The State offered no evidence on when officers are authorized to impound a vehicle." 868 N.W.2d at 530.

In this case, by contrast to *Sanders* and *Pogue*, the City of Columbia policy specifically limits an officer's discretion to seize and tow a vehicle to situations in which the three requirements discussed above are met. These three requirements place appropriate limits on police discretion to tow a vehicle, and the officers' compliance with the requirements renders the decision to tow it reasonable under the Fourth Amendment. *See Le*, 474 F.3d at 514-15 (holding the officer "acted according to standard procedures when he decided to impound the SUV" and thus "the decision to impound the SUV passes constitutional muster").

The dissent argues the towing provisions of section 7.2 of the policy do not contemplate towing a vehicle from private property. The argument is based in part on the fact that other sections of the policy specifically limit their application, and do not apply on private property. For example, section 7.1 of the policy permits officers to tow a vehicle only from a street or highway.[3] However, the fact other sections limit an officer's authority to tow to circumstances involving public property, while section 7.2 does not, supports a finding that the towing provisions in section 7.2 were intended to apply to vehicles on private property. *See supra* § 7.2 (stating "[d]epartment personnel may *also* tow . . ." (emphasis added)); *see also United States v. Marshall*, 168 F. Supp. 3d 846, 855 (D.S.C. 2016) (finding section 7.2 of the of the Auxiliary Traffic Services chapter in the Columbia Police

---

[3] Section 7.1 provides,

> Members of the Department may tow a vehicle meeting the following criteria:
> - Any unattended vehicle outside a business or residential area parked on a paved or main traveled part of the highway . . . .
> - Any vehicle left so as to prevent an unobstructed width of highway . . . .
> - Any vehicle left so that it cannot be seen clearly from a distance of two hundred feet . . . .
> - Any unattended vehicle illegally left standing upon any highway, . . . or under such circumstances as to obstruct the normal movement of traffic . . . .
> - Any vehicle left unattended in a metered parking space for a period of twenty-four hours . . . .

Department's Policy Manual permits officers to tow a vehicle from a private driveway). If Officers Westbury and McDonald had towed Miller's vehicle pursuant section 7.1 of the policy, the dissent would be correct because none of the section 7.1 criteria were met in this case. However, the officers towed Miller's vehicle pursuant to section 7.2, which applies to vehicles on private property.

Miller argues sections 56-5-2520 and 56-5-5635 of the South Carolina Code (2018) do not permit the police to tow vehicles from private property. We disagree with Miller's argument for two reasons. First, it is not necessary that more than one state law authorize the towing of a vehicle. As we have explained, state law authorized the local ordinance and police department policy that permitted the officers to tow Miller's vehicle.

Second, the important question regarding sections 56-5-2520 or 56-5-5635 is not whether they grant the police authority to tow vehicles from private property. Rather, the question regarding these sections is whether the Columbia Police Department policy conflicts with these provisions of state law. *See* § 5-7-30 (providing regulations and ordinances must not be "inconsistent with the Constitution and general law of this State"); *see also City of N. Charleston v. Harper*, 306 S.C. 153, 156, 410 S.E.2d 569, 571 (1991) (stating "the grant of power is given to local governments with the proviso that the local law not conflict with state law" (citing *City of Charleston v. Jenkins*, 243 S.C. 205, 208, 133 S.E.2d 242, 243 (1963))).

We find no conflict between the Columbia Police Department policy and these or any other state statutes. Subsection 56-5-2520(c)(3) provides,

> Any police officer may remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when . . . [t]he person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take such person before a magistrate or other judicial official without unnecessary delay.

While this subsection may not specifically authorize police officers to tow a vehicle from private property, it does not prohibit police officers from doing so. *See Marshall*, 168 F. Supp. 3d at 855 (finding section 56-5-2520 does not "exclude private driveways").

Miller also relies on subsection 56-5-5635(A), which provides,

> Notwithstanding another provision of law, a law enforcement officer who directs that a vehicle be towed for any reason, whether on public or private property, must use the established towing procedure for his jurisdiction. A request by a law enforcement officer resulting from a law enforcement action including, but not limited to, a vehicle collision, vehicle breakdown, or vehicle recovery incident to an arrest, is considered a law enforcement towing for purposes of recovering costs associated with the towing and storage of the vehicle unless the request for towing is made by a law enforcement officer at the direct request of the owner or operator of the vehicle.

This subsection likewise does not prohibit police officers from towing a vehicle from private property. In fact, this subsection contemplates that local law enforcement agencies will adopt standard towing procedures, and explicitly provides that police officers must use those established towing procedures when towing vehicles incident to arrest from private property. That is exactly what Officers Westbury and McDonald did in this case.

### C.     Reasonableness of the Inventory Search

Having determined it was reasonable for the officers to seize and tow Miller's vehicle, we turn to the question of whether the inventory search the police officers conducted in this case was reasonable under the Fourth Amendment.

In *Opperman*, the Supreme Court of the United States explained that inventory searches serve "three distinct needs: the protection of the owner's property while it remains in police custody; the protection [of] the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." 428 U.S. at 369, 96 S. Ct. at 3097, 49 L. Ed. 2d at 1005. In *Bertine*, the Supreme Court analyzed its jurisprudence on inventory searches in light of the facts of that case and held, "We conclude that . . . reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment . . . ." 479 U.S. at 374, 107 S. Ct. at 742, 93 L. Ed. 2d at 747. In *United States v. Matthews*, 591 F.3d 230 (4th Cir. 2009), the Fourth Circuit stated, "For the inventory

search exception to apply, the search must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy, and performed in good faith." 591 F.3d at 235 (quoting *Bertine*, 479 U.S. at 374 n.6, 107 S. Ct. at 742 n.6, 93 L. Ed. 2d at 747 n.6, and then citing *United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007)); *see also Opperman*, 428 U.S. at 372, 96 S. Ct. at 3098-99, 49 L. Ed. 2d at 1007 ("The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable.").

Miller does not argue the officers acted in bad faith, so "our analysis focuses only on whether the search was conducted pursuant to standardized criteria," *Matthews*, 591 F.3d at 235, and "pursuant to standard police procedures," *Opperman*, 428 U.S. at 372, 96 S. Ct. at 3098-99, 49 L. Ed. 2d at 1007. We also must determine whether the criteria set forth in the policy serve the "needs" an inventory search may legitimately address as explained in *Opperman*. 428 U.S. at 369, 96 S. Ct. at 3097, 49 L. Ed. 2d at 1005.

Section 7.2 of the policy states,

> Any officer towing a vehicle according to any provision in Sections 7.1 or 7.2 will complete a "Record of Stored Vehicle" . . . .
>
> The officer shall ensure the security of all items of value obtained in the passenger compartment of the vehicle. If possible, the officer shall store all items of value in the trunk of the vehicle. The vehicle's trunk key will be stored in the Property Room under the owner's name. If the vehicle does not have separate ignition and trunk keys, all items of value shall be stored in the Property Room under the owner's name. The officer should identify each item and its storage location on the "Record of Stored Vehicle."

In *Matthews*, the Fourth Circuit stated, "The existence of . . . a [standardized criteria] may be proven by reference to either written rules and regulations or testimony regarding standard practices." 591 F.3d at 235 (quoting *United States v. Thompson,*

29 F.3d 62, 65 (2d Cir. 1994));[4] *see also United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016) (same). During the suppression hearing, the officers testified they conducted the inventory search pursuant to their training in accordance with the written policy.

Based on the Policy Manual and the officers' testimony regarding the Department's standard practices described above, we conclude the inventory search of the Chevrolet was conducted pursuant to a valid standardized procedure. The policy requires an inventory search to be conducted every time a vehicle is towed. This is evident by the language of the policy: "The officer *shall* ensure the security of all items of value obtained in the passenger compartment of the vehicle." The policy also specifies how the inventory search should be conducted, including where to search, where to store items of value, and how to make a record of what items of value are found. Officer McDonald explained why it is standard procedure to conduct an inventory search of vehicles that are towed, "Pretty much we inventory vehicles to make sure that they can't say something was in the vehicle that wasn't so we're not held responsible." When asked what he was looking for, he testified, "Just valuables."

We find the Columbia Police Department policy as explained by the officers contains the "standard police procedures" and "standardized criteria" that serve legitimate needs as required by *Opperman*, *Bertine*, and *Matthews*. We have found no evidence the officers did not follow the policy while conducting the inventory search of the Chevrolet.[5] Therefore the inventory search was reasonable under the Fourth Amendment, and the trial court was correct to deny the motion to suppress.

---

[4] *Matthews* substituted "standardized criteria" for the phrase "valid procedure" in *Thompson*. *Thompson* used "such a valid procedure" to represent the language "standardized criteria . . . or established routine," 29 F.3d at 65, which it quoted from *Wells*, 495 U.S. at 4, 110 S. Ct. at 1635, 109 L. Ed. 2d at 6. *Thompson* quotes *Wells* as part of its explanation of what is "a valid procedure" for an inventory search. 29 F.3d at 65-66.

[5] During the suppression hearing, there was a brief exchange between Miller's counsel and Officer McDonald in which Officer McDonald stated he did not complete the written inventory list as required by the policy. During redirect, however, Officer McDonald clarified that the inventory list requirement applies only to items of value, and because no items of value were found, it was not necessary to complete an inventory list.

## III. Conclusion

For the reasons explained above, the trial court's decision to deny the motion to suppress and Miller's conviction for possession of crack cocaine are **AFFIRMED.**

**KITTREDGE, JAMES, JJ., and Acting Justice James E. Moore, concur. BEATTY, C.J., dissenting in a separate opinion.**

**CHIEF JUSTICE BEATTY:**  I respectfully dissent as I believe the circumstances did not reasonably justify the seizure, which precipitated the inventory search.  Initially, other than a citizen's "tip" about a vehicle making frequent stops in a location known for drug activity, the officers offered no objective justification for pursuing Miller's vehicle, asking for his information, and consent to search the vehicle.  Further, because the Columbia Police Department's policy did not provide the requisite authority to seize Miller's vehicle from the private driveway, the ultimate seizure was unlawful and, in turn, the resultant inventory search violated the Fourth Amendment.  Consequently, I would find the Court of Appeals erred in affirming the trial judge's denial of Miller's motion to suppress.

The Fourth Amendment to the United States Constitution protects a person's right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  "Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement."  *State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012) (citation omitted).  The State bears the burden of establishing "the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures."  *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013).

The inventory search exception to the Fourth Amendment is well-established.  *Robinson v. State*, 407 S.C. 169, 754 S.E.2d 862 (2014) (recognizing that police officers may conduct a warrantless inventory search, pursuant to their standard procedures, after a vehicle is lawfully impounded (citing *Colorado v. Bertine*, 479 U.S. 367, 374 (1987))).  However, prior to analyzing the reasonableness of an inventory search, a threshold question must be answered.  Specifically, the Court must first determine whether the predicate seizure was lawful as the inventory search is contingent on the seizure of the vehicle.

While our appellate courts have implicitly recognized that an inventory search is dependent upon a lawful seizure,[6] other jurisdictions have expressly identified this prerequisite.  *See, e.g.*, *People v. Spencer*, 948 N.E.2d 196, 203 (Ill. App. Ct. 2011) ("The threshold question in determining whether the search of an individual's vehicle qualifies as a valid inventory search is whether the prior impoundment was proper, since the need and justification for the inventory arise from the impoundment.");

---

[6]  *See State v. Lemacks*, 275 S.C. 181, 183, 268 S.E.2d 285, 286 (1980) (concluding police officers were justified in conducting an inventory search, which was "incident to [the vehicle's] lawful impoundment and removal to police headquarters because [the vehicle's] presence in the highway created a serious traffic hazard").

*Commonwealth v. Brinson*, 800 N.E.2d 1032, 1035 (Mass. 2003) ("A lawful inventory search is contingent on the propriety of the impoundment of the car."); *State v. Pogue*, 868 N.W.2d 522, 528 (N.D. 2015) ("The Fourth Amendment examination of an inventory search, therefore, turns not on the issue of probable cause, which is the traditional basis for the warrantless search of vehicles, but on the issues of whether the vehicle was *properly impounded* and the search was carried out in accordance with standard police procedures." (citation omitted)). *See Generally* Emile F. Short, Annotation, *Lawfulness of "inventory search" of motor vehicle impounded by police*, 48 A.L.R.3d 537 (1973 & Supp. 2018) (collecting state and federal cases discussing issues related to the propriety of inventory searches of impounded vehicles).

In my view, the analysis of whether Miller's vehicle was lawfully impounded necessarily begins with a discussion of the facts and circumstances that preceded Miller's arrest for driving under suspension. During the suppression hearing, Officer Westbury testified that, while investigating criminal activity unrelated to the instant case, he received a citizen's complaint and description of a vehicle seen "going multiple times" to a location known for drug activity. Shortly thereafter, Officers Westbury and McDonald observed a vehicle matching the description pull into a gas station parking lot. Officers Westbury and McDonald, driving separate vehicles, followed the vehicle after it left the gas station, drove down several residential streets, and then pulled into and parked in the private driveway of an apartment complex. It was later determined that Miller's girlfriend resided at the apartment complex.

After Miller voluntarily exited the vehicle, Officer Westbury requested his information and then asked Miller for consent to search the vehicle. Miller refused to consent. While Officer Westbury continued to talk to Miller, Officer McDonald checked Miller's information and discovered that he was driving with a suspended license. The officers then arrested Miller for this offense.

Notably, during the suppression hearing, Officer Westbury acknowledged that this was not a traffic stop and Miller was not suspected of any crime at the time he parked in the private driveway.[7] Officer McDonald also admitted that they "did not

---

[7] Significantly, unlike the defendant in *United States v. Brown*, 787 F.2d 929 (4th Cir. 1986), a case relied on by the majority, the officers did not stop Miller's vehicle after observing a traffic violation on a highway.

pull [Miller] over for a traffic violation."  Yet, Officer Westbury asked Miller for consent to search the vehicle.

Given this evidence, I would find the officers' decision to tow Miller's vehicle from a private driveway was improper as it was based solely on a suspicion of drug activity.  *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (recognizing that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"); *Bertine*, 479 U.S. at 375 ("Nothing in *Opperman* or [*Illinois v.*] *Layfayette*, [462 U.S. 640 (1983)] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria *and on the basis of something other than suspicion of evidence of criminal activity*." (emphasis added)); *cf. S. Dakota v. Opperman*, 428 U.S. 364, 376 (1976) (upholding inventory search where "there [was] no suggestion whatever that this standard procedure . . . was a pretext concealing an investigatory police motive").

However, even accepting that the initial stop was justified and the decision to impound the vehicle was not pretext for searching Miller's vehicle without a warrant, I believe the mere existence of a police department policy is insufficient to satisfy the State's burden of proving the applicability of the inventory search exception to the Fourth Amendment.  *See Spencer*, 948 N.E.2d at 203 ("[T]he existence of a police regulation cannot be used as a predicate to determine the lawfulness or reasonableness of an inventory search of a vehicle.").  "To hold otherwise would grant the police an unlimited ability to evade the requirements of the fourth amendment by promulgating regulations that authorize the use of inventory searches following every arrest."  *Id*.  Unlike the majority, I do not believe the Columbia Police Department's policy authorized the officers to seize Miller's vehicle from a private driveway.

When Section 6 of Chapter 5 of the "Auxiliary Traffic Services" is read as a whole, it is evident the purpose of the policy is to protect the public from potential dangers on roadways and highways.[8]  In fact, much of Section 6 is devoted to

---

[8]  Section 1.0 entitled "Directive" provides in pertinent part:

The Columbia Police Department recognizes the responsibility for the safety of the public using the roads and highways within the City of Columbia.  The Department recognizes the responsibility to assist motorists in non-emergency and emergency situations that may develop on the city's streets and highways.

procedures addressing "Abandoned or Derelict" vehicles.[9]  In view of this "caretaking" purpose, it is difficult to justify the seizure of Miller's vehicle, which was parked in a private driveway, when it posed no risk to the public.  *See United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996) ("The policy of impounding [a] car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.").

Moreover, Section 7.2, the specific provision relied on by the State to support the lawfulness of the initial seizure, references a South Carolina code section that authorizes police officers to tow vehicles "found upon a highway."  Section 7.2 authorizes Columbia City police officers to tow:

- Any vehicle from which an officer makes an arrest and there is no responsible party to whom the arrestee can turn over the possession of the vehicle (§ 56-5-2520 S.C. Code).[10]

---

[9]  *See, e.g.*, Section 5.0 ("An abandoned vehicle is defined as . . . a motor vehicle that has remained illegally on private or public property for a period of more than seven (7) days without the consent of the owner or person in control of the property (§ 56-5-5810 S.C. Code)."); Section 7.1 (identifying criteria for which an officer may tow "improperly stopped, standing or parked vehicles" on the highway).

[10]  Section 56-5-2520 provides in relevant part:

> (c) Any police officer may remove or cause to be removed to the nearest garage or other place of safety any vehicle *found upon a highway* when:
>
> . . . .
>
> (3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take such person before a magistrate or other judicial official without unnecessary delay.

S.C. Code Ann. § 56-5-2520(c)(3) (2018) (emphasis added).

Notably, section 56-5-2520 is contained within Chapter 5, which is entitled "Uniform Act Regulating Traffic on *Highways*."  S.C. Code Ann. §§ 56-5-10 to -6565 (2018) (emphasis added).  The provisions of Chapter 5 "relating to the operation of vehicles refer *exclusively* to the operation of vehicles upon highways" except:  (1) "[w]hen a different place is specifically referred to in a given section; and (2) [t]hat the provisions of Articles 9[11] and 23[12] shall apply upon highways and elsewhere throughout the State."  S.C. Code Ann. § 56-5-20 (2018) (emphasis added).  Neither of these exceptions is present in the instant case.

Further, I believe section 56-5-5635(A) is inapposite.  This section states:

> Notwithstanding another provision of law, a law enforcement officer who directs that a vehicle be towed for any reason, whether on public or private property, must use the established towing procedure for his jurisdiction.  A request by a law enforcement officer resulting from a law enforcement action including, but not limited to, a vehicle collision, vehicle breakdown, or vehicle recovery incident to an arrest, is considered a law enforcement towing for purposes of recovering costs associated with the towing and storage of the vehicle unless the request for towing is made by a law enforcement officer at the direct request of the owner or operator of the vehicle.

S.C. Code Ann. § 56-5-5635(A) (2018).  While the statute indicates that law enforcement may tow a vehicle from private property, this single reference cannot be construed as an authorization to do so.  Rather, the section mandates that law enforcement follow established towing procedures, which presupposes a lawful seizure.  Therefore, I disagree with the majority's attempt to glean affirmative authority from sections 56-5-2520 and 56-5-5635 simply because they do not prohibit police officers from towing a vehicle from private property.

Additionally, given the express authorization in section 56-5-2520(c)(3) for officers to tow vehicles from highways and the absence of a reference to private property, I would find the Columbia Police Department's policy conflicts with state law and is, therefore, void.  *See Town of Hilton Head Island v. Fine Liquors, Ltd.*,

---

[11]  Article 9 provides for the duties and reporting procedures following vehicular accidents.  S.C. Code Ann. §§ 56-5-1210 to -1360 (2018).

[12]  Article 23 provides for the offenses of reckless homicide, reckless driving, and driving under the influence.  S.C. Code Ann. §§ 56-5-2910 to -2995 (2018).

302 S.C. 550, 553, 397 S.E.2d 662, 664 (1990) ("[I]n order for there to be a conflict between a state statute and a municipal ordinance both must contain either express or implied conditions which are inconsistent or irreconcilable with each other." (citation and internal quotations marks omitted)); *City of N. Charleston v. Harper*, 306 S.C. 153, 156, 410 S.E.2d 569, 571 (1991) ("Where there is a conflict between a state statute and a city ordinance, the ordinance is void.").

Finally, even accepting the majority's conclusion that the Columbia Police Department's policy authorized the officers to tow Miller's vehicle from private property, I would find the officers failed to comply with the procedure outlined in Section 7.2. In relevant part, Section 7.2 states: "Department personnel may also tow the following vehicles: Any vehicle from which an officer makes an arrest *and there is no responsible party to whom the arrestee can turn over the possession of the vehicle* (§56-5-2520 S.C. Code)." (Emphasis added.) Contrary to the majority's interpretation, this provision does not require the responsible party be "present" at the location of the vehicle about to be towed. Here, Officer McDonald admitted that he did not check to determine if there was a responsible party despite the requirement in the policy.

Based on the foregoing, I would conclude that the seizure and the subsequent inventory search were unreasonable. As a result, I would find the Court of Appeals erred in affirming the trial judge's decision to deny Miller's motion to suppress the drug evidence.